# BANKERS LIFE & CASUALTY CO. v. HOLLAND, CHIEF JUDGE, ET AL.

No. 16. Argued October 12–13, 1953.—Decided November 30, 1953.

*Charles F. Short, Jr.* argued the cause for petitioner. With him on the brief was *Miller Walton.*

*M. H. Blackshear, Jr.* argued the cause for respondents. With him on the brief were *Eugene Cook,* Attorney General of Georgia, and *Lamar W. Sizemore,* Assistant Attorney General.

MR. JUSTICE CLARK delivered the opinion of the Court.

The question here is whether mandamus is an appropriate remedy to vacate a severance and transfer order entered by a district judge on the ground of improper venue, under 28 U. S. C. § 1406 (a).[1]

---

[1] "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

This case arises out of a treble damage action brought by petitioner, an Illinois insurance corporation, in the United States District Court for the Southern District of Florida, alleging a conspiracy to injure petitioner's business, in violation of the Sherman and Clayton Acts. The complaint named as defendants the insurance commissioners of Georgia and Florida, one other individual, and four insurance companies residing and transacting business in the Southern District of Florida. The Georgia insurance commissioner, Cravey, was personally served in the Northern District of Florida and, without entering his appearance or waiving venue, moved to quash the summons and return of service and dismiss him from the action for improper venue.

The applicable venue statute for private treble damage actions brought under the antitrust laws, 15 U. S. C. § 15, allows suit "in any district court of the United States in the district in which the defendant resides or is found or has an agent . . . ." It is admitted that Commissioner Cravey was not a resident of the Southern District of Florida, but petitioner contends that the Commissioner "was a member of a conspiracy whose other members were residing and carrying on the illegal business of the conspiracy in the Southern District of Florida, . . . that a conspiracy is a partnership and that co-conspirators are each other's agents . . ." and that the Commissioner therefore was "found" and had "agents" in the district, within the meaning of the statute. In furtherance of its theory that the Commissioner was "found" in the district, petitioner alleged overt acts committed by the Commissioner, as well as his codefendants, in the district where the suit was filed. The respondent judge held that the court had jurisdiction of the action and of the Commissioner, under Rule 4 (f) of the Rules of Civil Procedure, service of process having been had on him in the Northern District of Florida. The judge held, however, that venue was

not properly laid and, pursuant to 28 U. S. C. § 1406 (a), ordered the action as to Cravey severed and transferred to the Northern District of Georgia where Cravey resided. Petitioner then sought a writ of mandamus from the Court of Appeals to compel the respondent to vacate and set aside the order of severance and transfer. The Court of Appeals dismissed the petition for mandamus on the ground that it was not an appropriate remedy. 199 F. 2d 593. Because of the importance of the question in the effective administration of federal law we granted certiorari. 345 U. S. 933.

At the outset it appears to be agreed that the District Court had jurisdiction over Commissioner Cravey under the process served on him in the Northern District of Florida.[2] However, petitioner contends that the respondent judge had "power" to order the severance and transfer *only* if venue was improperly laid and that when venue is proper that "power" does not exist. Petitioner insists that venue was proper on the theory aforesaid that the Commissioner was "found" or had "agents" in the district; that the severance and transfer order was therefore void but being interlocutory no appeal would lie; and that the only effective remedy is mandamus. While it admits that the order eventually may be reviewed on appeal from final judgment in the case, petitioner contends that insurmountable procedural difficulties requiring appeals from, and reversals of, the final judgments in both the Florida action and the severed action in Georgia render that remedy speculative, ineffective and

---

[2] Rule 4 (f) of Rules of Civil Procedure:

"TERRITORIAL LIMITS OF EFFECTIVE SERVICE. All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state. A subpoena may be served within the territorial limits provided in Rule 45."

inadequate in preventing needless expense, hardship and judicial inconvenience. Wherefore, it says, the extraordinary writ of mandamus is appropriate.

We are of the opinion that in the circumstances of this case the writ was inappropriate.

The All Writs Act grants to the federal courts the power to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U. S. C. § 1651 (a). As was pointed out in *Roche* v. *Evaporated Milk Assn.,* 319 U. S. 21, 26 (1943), the "traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Here, however, petitioner admits that the court had jurisdiction both of the subject matter of the suit and of the person of Commissioner Cravey and that it was necessary in the due course of the litigation for the respondent judge to rule on the motion. The contention is that in acting on the motion and ordering transfer he exceeded his legal powers and this error ousted him of jurisdiction. But jurisdiction need not run the gauntlet of reversible errors. The ruling on a question of law decisive of the issue presented by Cravey's motion and the replication of the petitioner was made in the course of the exercise of the court's jurisdiction to decide issues properly brought before it. *Ex parte American Steel Barrel Co.,* 230 U. S. 35, 45–46 (1913); *Ex parte Roe,* 234 U. S. 70, 73 (1914). Its decision against petitioner, even if erroneous—which we do not pass upon—involved no abuse of judicial power, *Roche* v. *Evaporated Milk Assn., supra,* and is reviewable upon appeal after final judgment.[3] If we applied the reasoning advanced by

---

[3] See *Gulf Research & Development Co.* v. *Leahy,* 193 F. 2d 302 (1951).

the petitioner, then every interlocutory order which is wrong might be reviewed under the All Writs Act. The office of a writ of mandamus would be enlarged to actually control the decision of the trial court rather than used in its traditional function of confining a court to its prescribed jurisdiction. In strictly circumscribing piecemeal appeal,[4] Congress must have realized that in the course of judicial decision some interlocutory orders might be erroneous. The supplementary review power conferred on the courts by Congress in the All Writs Act is meant to be used only in the exceptional case where there is clear abuse of discretion or "usurpation of judicial power" of the sort held to justify the writ in *De Beers Consolidated Mines* v. *United States,* 325 U. S. 212, 217 (1945). This is not such a case.

It is urged, however, that the use of the writ of mandamus is appropriate here to prevent "judicial inconvenience and hardship" occasioned by appeal being delayed until after final judgment. But it is established that the extraordinary writs cannot be used as substitutes for appeals, *Ex parte Fahey,* 332 U. S. 258, 259–260 (1947), even though hardship may result from delay and perhaps unnecessary trial, *United States Alkali Export Assn.* v. *United States,* 325 U. S. 196, 202–203 (1945); *Roche* v. *Evaporated Milk Assn., supra,* at 31; and whatever may be done without the writ may not be done with it. *Ex parte Rowland,* 104 U. S. 604, 617 (1882). We may assume that, as petitioner contends, the order of transfer defeats the objective of trying related issues in a single action and will give rise to a myriad of legal and practical problems as well as inconvenience to both courts; but Congress must have contemplated those conditions in providing that only final judgments are reviewable. Petitioner has alleged no special circumstances such as were

---

[4] 28 U. S. C. §§ 1291, 1292.

present in the cases which it cites.[5]   Furthermore, whatever "judicial inconvenience and hardship" may exist here will remain, after transfer, within the realm of the same court of appeals which has denied the writ, since both of the districts are within that circuit; and it is not clear that adequate remedy cannot be afforded petitioner in due course by that court to prevent some of the conflicts and procedural problems anticipated.

We note additionally that the petitioner has not met the burden of showing that its right to issuance of the writ is "clear and indisputable."   *United States* v. *Duell,* 172 U. S. 576, 582 (1899).   While a criminal action under the antitrust laws lies in any district where the conspiracy was formed or in part carried on or where an overt act was committed in furtherance thereof,[6] Congress by 15 U. S. C. § 15 placed definite limits on venue in treble damage actions.   Certainly Congress realized in so doing that many such cases would not lie in one district as to all defendants, unless venue was waived.   It must, therefore, have contemplated that such proceedings might be severed and transferred or filed in separate districts originally.   Thus petitioner's theory has all the earmarks of a frivolous albeit ingenious attempt to expand the statute.

We adhere to the language of this Court in *Ex parte Fahey, supra,* at 259–260:

> "Mandamus, prohibition and injunction against judges are drastic and extraordinary remedies.   We do not doubt power in a proper case to issue such writs.   But they have the unfortunate consequence

---

[5] *Ex parte Simons,* 247 U. S. 231 (1918); *United States Alkali Export Assn.* v. *United States, supra; De Beers Consolidated Mines* v. *United States, supra.*   See also *Ex parte United States,* 287 U. S. 241 (1932); *Maryland* v. *Soper,* 270 U. S. 9 (1926).

[6] *United States* v. *Trenton Potteries Co.,* 273 U. S. 392, 402–403 (1927); *United States* v. *Socony-Vacuum Oil Co.,* 310 U. S. 150, 252–253 (1940).

of making the judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants before him. These remedies should be resorted to only where appeal is a clearly inadequate remedy. . . . As extraordinary remedies, they are reserved for really extraordinary causes."

*Affirmed.*

MR. JUSTICE DOUGLAS concurs in the result.

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE JACKSON and MR. JUSTICE MINTON join, dissenting.

This case presents one of those clear situations where due regard for the canons governing the exercise of the Court's certiorari jurisdiction calls for dismissal of the writ as improvidently granted.

1. Whatever view one may take of the scope of the venue requirement of § 4 of the Clayton Act, 15 U. S. C. § 15, it cannot be doubted that that section precludes the Georgia Commissioner of Insurance from being made a defendant in this suit unless he "resides or is found or has an agent" in the Southern District of Florida, or has consented, by formal appearance or by some other form of waiver, to be sued there.

He has neither consented nor made such a waiver. On the contrary, he has stood on the right Congress gave him and has resisted his amenability to suit in the Southern District of Florida.

2. The only basis, on the record before us, for the claim that § 4 subjected the Georgia Commissioner to suit is the suggestion that since the complaint charges a conspiracy between him and co-conspirators who reside in the Southern District of Florida, the latter thereby became his "agents" within the meaning of § 4 of the Clayton Act. The Court now characterizes this contention as "frivolous." Presumably that is why this issue was

not brought here and the grant of the writ was restricted to question 1.[1]   345 U. S. 933.

3. If we now had to decide whether a co-conspirator as such is an "agent" for purposes of venue under 15 U. S. C. § 15, it cannot be doubted that we would have to conclude that the district judge was right in finding that the Georgia Commissioner could not be kept in the suit. Once it is clear that the Georgia defendant has the right to be let out, all discussion of the limits of mandamus becomes irrelevant and gratuitous. Obviously a judge cannot be mandamused to put a proposed defendant into a litigation when as a matter of unquestioned law he should be let out.

---

[1] The questions the petition for certiorari presented were as follows:

"1. Is mandamus an appropriate remedy to vacate the order of severance and transfer as an unwarranted renunciation of jurisdiction which would compel needless duplicity of trials and appeals to enforce the right to a single trial against all defendants in a proper forum?

"2. Where venue is properly laid in a district in which a non-resident conspirator is 'found' and has agents within the meaning of 15 U. S. C. § 15, is mandamus appropriate to vacate the order of severance and transfer as being in excess of the power of transfer conferred by 28 U. S. C. § 1406 (a)?

"3. Is a non-resident conspirator 'found' for venue purposes within the meaning of 15 U. S. C. § 15 when, although served with process in another district in the same state, venue is laid in a district where he has, in person when physically present and at other times through the agency of his resident co-conspirators, engaged in the business of the conspiracy in violation of the antitrust laws to the substantial injury of plaintiff's business?

"4. Are the resident co-conspirators of a non-resident conspirator his agents for venue purposes within the meaning of 15 U. S. C. § 15 when venue is laid in a district where he has, through the agency of his resident co-conspirators, engaged in the business of the conspiracy in violation of the antitrust laws to the substantial injury of plaintiff's business?"

4. Since the mandamus question would not have been brought here had the volume of business that confronts the Court permitted the record to be examined in passing on the petition for certiorari as it now has been, we should not feel ourselves bound to discuss that question after we have had the kind of careful consideration that is given a case after argument.[2]

5. It is a too easy view that now that the case is here we might as well dispose of it on the assumption on which it was brought here. The short but important answer is that which was made by Mr. Chief Justice Taft on behalf of the whole Court in *Layne & Bowler Corp.* v. *Western Well Works, Inc.,* 261 U. S. 387, 393.

> "If it be suggested that as much effort and time as we have given to the consideration of the alleged conflict would have enabled us to dispose of the case before us on the merits, the answer is that it is very important that we be consistent in not granting the writ of certiorari except in cases involving principles the settlement of which is of importance to the public as distinguished from that of the parties, and in cases where there is a real and embarrassing conflict of opinion and authority between the circuit courts of appeal. The present case certainly comes under neither head." [3]

The case before us is more compelling for dismissal, since the question on which we granted certiorari does not here arise.

6. Discussion of mandamus in this case is not even useful as *dicta* for future guidance on an important issue.

---

[2] It should be noted that during the last Term the Court disposed of 1,286 cases.

[3] The case of *Hammerstein* v. *Superior Court,* 341 U. S. 491, is a very recent instance of where the Court after argument took a more careful look at a grant of certiorari and dismissed the writ as improvidently granted.

The Court's opinion does not help decision when a party is dismissed from a litigation for reasons not as obviously compelling as those in this case. It necessarily leaves open the question whether such a ruling by a district judge may be reviewed by mandamus, without awaiting the completion of the entire litigation, in circumstances where postponement of review would involve a protracted trial, entailing heavy costs and great inconvenience. Compare *Ex parte Skinner & Eddy Corp.*, 265 U. S. 86, 95–96, with *Ex parte Chicago, R. I. & P. R. Co.*, 255 U. S. 273. This Court ought not to be called upon to hold that where a district judge refused to entertain a "frivolous" claim, mandamus will not issue to compel him to entertain it. But that is the only holding of the Court's decision today.