KERR ET AL. *v.* UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF CALIFORNIA ET AL.

No. 74–1023.   Argued November 11, 1975—Decided June 14, 1976

Marshall, J., delivered the opinion of the Court, in which all Members joined except Stevens, J., who took no part in the consideration or decision of the case.

*Karl S. Mayer,* Deputy Attorney General of California, argued the cause for petitioners. With him on the briefs were *Evelle J. Younger,* Attorney General, *Jack R. Winkler,* Chief Assistant Attorney General, *Derald E. Granberg, John T. Murphy, Jean M. Bordon,* Deputy Attorneys General, and *Edward P. O'Brien,* Assistant Attorney General.

*B. E. Bergesen III* argued the cause for respondents. With him on the brief was *Sidney M. Wolinsky.*

Mr. Justice Marshall delivered the opinion of the Court.

Petitioners, defendants in a class action, sought issuance of writs of mandamus from the United States Court of Appeals for the Ninth Circuit to compel the District Court to vacate two discovery orders. The Court of Appeals refused to issue the writs. We hold that in the circumstances of this case—and particularly in light of

the availability of an alternative, less extreme, path to modification of the challenged discovery orders—issuance of the writ is inappropriate. We therefore affirm.

## I

Seven prisoners in the custody of the Department of Corrections of the State of California filed a class action in the United States District Court for the Northern District of California on behalf of themselves and "on behalf of all adult male felons who now are, as well as all adult male felons who in the future will be, in the custody of the California Department of Corrections, whether confined in an institution operated by the Department or on parole." App. 370.[1] Among the defendants in the action are petitioners in this case: the individual members of the California Adult Authority, the Administrative Officer of the California Adult Authority, and the Director of Corrections of the State of California. Plaintiffs' complaint alleges substantial constitutional violations in the manner in which the California Adult Authority carries out its function of determining the length and conditions of punishment for convicted criminal offenders.

In the course of discovery, plaintiffs submitted requests for the production of a number of documents pursuant to Fed. Rule Civ. Proc. 34. Petitioners' subsequent two petitions for writs of mandamus were concerned with two classes of documents that were part of these requests. The first class, part of a series of requests first made in June 1973, and which will be referred to here as the "Adult Authority files," is generally composed of the personnel files of all members and employees of the Adult Authority, all Adult Author-

---

[1] The seven prisoners and the class they represent will be referred to here as "plaintiffs."

ity documents relating to its past, present, or future operation, and all memoranda written by the Chairman of the Adult Authority within the preceding five years.[2] The second class of documents with which we are concerned was first requested by plaintiffs in November 1973,

---

[2] The documents were specifically described in plaintiffs' requests numbered 7, 14, 15, 18, 20, 21, and 22:

"7. All files, including all personnel files, which are maintained by the Adult Authority or by the Department of Corrections, or by any officer or employee thereof, with respect to each member, each hearing representative, and the Executive Officer of the Adult Authority."

"14. Each report submitted by any member, hearing representative, Executive Officer, or any other employee or official of the Adult Authority . . . ."

"15. All written statements written or delivered by any member or hearing representative or the Executive Officer of the Adult Authority during the past 5 years favoring, opposing, or in any way commenting upon bills or other legislation or legislative proposal pending in the U. S. House of Representatives, the Senate of the United States, or the California Legislature."

"18. All written proposals for any change whatsoever in the organization or operation of, qualifications for, or substantive criteria and procedures to be employed by the Adult Authority . . . ."

"20. All memoranda written by the Chairman of the Adult Authority during the past 5 years, no matter to whom sent, including without limitation memoranda sent to other government organizations, agencies or officials, or to other members, hearing representatives, officials or employees of the Adult Authority."

"21. All documents in effect on November 15, 1972 which pertain to any Policy Statement or Resolution issued by the Adult Authority, including without limitation any file maintained on any Resolution or Policy Statement and all such documents executed or issued subsequent to that date."

"22. All documents, however formal or informal, issued during the past calendar year, which concern the Adult Authority's adoption of new policies, procedures, criteria, and the like, to be followed by members, hearing representatives, officials and employees . . . ." App. 52–56.

and will be referred to here as the "prisoners' files." Plaintiffs requested the opportunity to examine the files of every twentieth inmate at each California Department of Corrections institution, App. 234; the class of documents, therefore, is composed of the correctional files of a sample of the prisoners in the custody of the California Department of Corrections.

When presented with the request for the Adult Authority files, petitioners objected, claiming that the files were irrelevant, confidential, and privileged, and suggesting that they should not be required to turn over the files to plaintiffs without prior *in camera* review by the District Court to evaluate the claims of privilege. Plaintiffs moved, pursuant to Fed. Rule Civ. Proc. 37, for an order compelling discovery. App. 76. The District Court referred the matter to a Magistrate for findings and recommendations, and the Magistrate recommended that the District Court order production of the Adult Authority files without undertaking an *in camera* inspection of the files. The District Court accepted the Magistrate's recommendations and ordered the production of the documents. Seeking to limit distribution of the personnel files of the Adult Authority members and their employees, however, the District Court issued a protective order limiting the number of people associated with the plaintiffs who could examine those documents:

> "[N]o personnel file of any member of the Adult Authority, hearing representative or executive officer, nor any copy of any of its contents, shall be shown to any person except counsel of record for the plaintiffs and no more than a total of two investigators designated by such counsel, and then only to the extent necessary to the conduct of this action." Pet. for Cert. xvi.

Dissatisfied with the District Court's ruling, petitioners filed a petition for a writ of mandamus under 28 U. S. C. § 1651 (a),[3] requesting the Court of Appeals for the Ninth Circuit to vacate the District Court's order granting plaintiffs' motion to compel discovery. The Court of Appeals denied the petition in an opinion filed on January 17, 1975. 511 F. 2d 192. It concluded first that since "the question of relevancy 'is to be more loosely construed at the discovery stage than at the trial,' 8 Wright & Miller, Federal Practice and Procedure, § 2008 at 41 (1970)," issuance of the writ on the grounds of the asserted irrelevance of the documents in question was inappropriate. *Id.,* at 196. According to the Court of Appeals, discovery of the documents was part of "a proper line of attack" in the underlying lawsuit. *Ibid.* The court went on to observe that petitioners had no absolute privilege that would allow them to avoid production of the documents at issue. The court did recognize, however, the existence of a qualified common-law governmental privilege "encompassing and referred to sometimes as the official or state secret privilege," *id.,* at 198, that could conceivably cover the requested documents. But relying on this Court's decision in *United States* v. *Reynolds,* 345 U. S. 1 (1953), the Court of Appeals indicated that because the assertions of privilege were not personally made by high-level officials of the California Adult Authority and because the assertions of privilege were lacking in what it saw to be the requisite specificity, issuance of the writ on grounds of privilege was inappropriate:

"Neither the Chairman of the [Adult] Authority

---

[3] Title 28 U. S. C. § 1651 (a) provides:

"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

nor the Director of Corrections nor any official of these agencies asserted, in person or writing, any privilege in the district court.

"The claiming official must ' "have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced" ' [*United States* v. *Reynolds,* 345 U. S., at 8 n. 20, quoting from *Duncan* v. *Cammell, Laird & Co.,* [1942] A. C. 624, 638,] and state with specificity the rationale of the claimed privilege. . . .

"In [this] suit, petitioners' counsel merely raised a blanket objection covering any and all documents in request numbers 7, 14, 15, 18, 20, 21 and 22. Formally claiming a privilege should involve specifying which documents or class of documents are privileged and for what reasons, especially where the nature of the requested documents does not reveal an obviously privileged matter. . . .

"In sum, the petition fails to show such an [*sic*] usurpation by the district court that warrants the extraordinary remedy of writ of mandamus." 511 F. 2d, at 198–199.

A similar course was followed with regard to the requests for the prisoners' files. When petitioners, asserting grounds of privilege, objected to the requests, plaintiffs filed a motion to compel production which the District Court referred for findings and recommendations to a Magistrate. The Magistrate recommended that petitioners be required to produce up to 200 prisoner files subject to a protective order "that would restrict examination and inspection of inmate files to attorneys for plaintiffs and for their use only in connection with this lawsuit." Pet. for Cert. xl. The District Court accepted the Magistrate's recommendation, but added to the rec-

ommended protective order a requirement that no prisoner's file be turned over for examination without the inmate's consent. *Id.*, at xxxi, xxxiii. Petitioners then filed a petition for mandamus which the Court of Appeals denied by order and without opinion on December 18, 1974. *Id.*, at xxiii.

Petitioners sought review in this Court of the denial of both petitions.[4] We granted certiorari.[5] 421 U. S. 987. (1975).

---

[4] While it has not yet come to trial, there have been additional developments in the underlying case during the pendency of the instant action before this Court. Since none of these developments are relevant to the resolution of the issue before us, we simply summarize them.

Subsequent to the filing of the petition for certiorari in the instant case, plaintiffs filed a second amended complaint in the underlying action in which they added allegations which led petitioners in turn to request the appointment of a three-judge District Court to hear the case. See 28 U. S. C. § 2281. The single judge then hearing the case certified it to the Chief Judge of the Court of Appeals for the Ninth Circuit as one appearing to require the convening of a three-judge court. The Chief Judge appointed the three members of the court on October 28, 1975, several days before oral argument was held in the instant case. But soon thereafter plaintiffs amended their complaint once again. This subsequent amendment made the convening of a three-judge court appear unnecessary and the three-judge court dissolved itself, remanding the entire case to the single judge originally assigned to the case. Thus, as the matter now stands, the underlying action is being heard by a single-judge District Court.

[5] Subsequent to our grant of certiorari but before oral argument, plaintiffs represented to this Court that they "no longer seek any of the documents which are the subject of this appeal, because the trial of [the underlying] case in District Court will be completed before this Court is able to decide [the] issues before it." Memorandum of Respondents Concerning Mootness of Pending Matter 1–2. They therefore suggested that we hold this case moot. Plaintiffs never advised the District Court that they did not want the documents.

We deferred decision on the suggestion of mootness until after

## II

The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations. *Will* v. *United States,* 389 U. S. 90, 95 (1967); *Bankers Life & Cas. Co.* v. *Holland,* 346 U. S. 379, 382–385 (1953); *Ex parte Fahey,* 332 U. S. 258, 259 (1947). As we have observed, the writ "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Will* v. *United States, supra,* at 95, quoting *Roche* v. *Evaporated Milk Assn.,* 319 U. S. 21, 26 (1943). And, while we have not limited the use of mandamus by an unduly narrow and technical understanding of what constitutes a matter of "jurisdiction," *Will* v. *United States, supra,* at 95, the fact still remains that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Ibid.*

Our treatment of mandamus within the federal court system as an extraordinary remedy is not without good reason. As we have recognized before, mandamus actions such as the one involved in the instant case "have the unfortunate consequence of making the [district court] judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants [appearing] before him" in the underlying case. *Bankers Life & Cas. Co.* v. *Holland, supra,* at 384–385,

---

oral argument. However, at oral argument counsel for plaintiffs stated that, because the trial date for the underlying action had been substantially delayed, they had changed their minds and did indeed want the documents. Tr. of Oral Arg. 38, 40–41. While no papers were filed here formally withdrawing the suggestion of mootness, plaintiffs' representations at oral argument, combined with the fact that the trial of the underlying action has not yet taken place, leave us with no indication that this case is moot.

quoting *Ex parte Fahey, supra,* at 260. More importantly, particularly in an era of excessively crowded lower court dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation. It has been Congress' determination since the Judiciary Act of 1789 that as a general rule "appellate review should be postponed . . . until after final judgment has been rendered by the trial court." *Will* v. *United States, supra,* at 96; *Parr* v. *United States,* 351 U. S. 513, 520–521 (1956).[6] A judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by that judgment of Congress.

As a means of implementing the rule that the writ will issue only in extraordinary circumstances, we have set forth various conditions for its issuance. Among these are that the party seeking issuance of the writ have no other adequate means to attain the relief he desires, *Roche* v. *Evaporated Milk Assn., supra,* at 26, and that he satisfy "the burden of showing that [his] right to issuance of the writ is 'clear and indisputable.'" *Bankers Life & Cas. Co.* v. *Holland, supra,* at 384, quoting *United States* v. *Duell,* 172 U. S. 576, 582 (1899); *Will* v. *United States, supra,* at 96. Moreover, it is important to remember that issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed. *Schlagenhauf* v. *Holder,* 379 U. S. 104, 112 n. 8 (1964); *Parr* v. *United States, supra,* at 520. See also *Technitrol, Inc.* v. *McManus,* 405 F. 2d 84 (CA8 1968), cert. denied, 394 U. S. 997 (1969); *Pacific Car & Foundry Co.* v. *Pence,* 403 F. 2d 949 (CA9 1968).

---

[6] The use of extraordinary writs aside, it is only in narrowly defined circumstances, see 28 U. S. C. § 1292, that the appellate jurisdiction of the courts of appeals extends to interlocutory orders.

When looked at in the framework of these factors, it would appear that the actions of the Court of Appeals in this case should be affirmed. What petitioners are seeking here is not a declaration that the documents in question are absolutely privileged and that plaintiffs can never have access to any of them. On the contrary, petitioners request only that "production of the confidential documents not be compelled without a prior informed determination by the district court that plaintiffs' need for them in the action below outweighs their confidentiality." Brief for Petitioners 77–78. Petitioners ask in essence only that the District Court review the challenged documents *in camera* before passing on whether each one individually should or should not be disclosed. But the Court of Appeals' opinion dealing with the Adult Authority files did not foreclose the possible necessity of such *in camera* review. Its denial of the writ was based largely on the grounds that the governmental privilege had not been asserted personally by anyone eligible to assert it, and that it had not been asserted with the requisite specificity. The court apparently left open the opportunity for petitioners to return to the District Court, assert the privilege more specifically and through responsible officials, and then have their request for an *in camera* review of the materials by the District Court reconsidered in a different light:

> "Since there may be information in the requested documents which should be protected, the petitioners may assert a privilege to a particular document or class of documents, and perhaps seek *in camera* inspection, at the time the documents are discovered in the district court." 511 F. 2d, at 198–199.

Petitioners contend that by denying the petition for mandamus the Court of Appeals has afforded them no remedy at all. To the contrary, we read the above-

quoted language of the opinion as providing petitioners an avenue far short of mandamus to achieve precisely the relief they seek.

To the extent that the opinion below might be regarded as ambiguous, we are fortified in our reading of it by a recognition of the serious consequences which could flow from an unwarranted failure to grant petitioners the opportunity to have the documents reviewed by the trial judge *in camera* before being compelled to turn them over. Petitioners' claims of privilege rest in large part on the notion that turning over the requested documents would result in substantial injury to the State's prison-parole system by unnecessarily chilling the free and uninhibited exchange of ideas between staff members within the system, by causing the unwarranted disclosure and consequent drying up of confidential sources,[7] and in general by unjustifiably compromising the confidentiality of the system's records and personnel files.[8] In light of the potential seriousness of these considerations and in light of the fact that the weight to be accorded them will inevitably vary with the nature of the specific documents in question, it would seem that an *in camera* review of the documents is a relatively costless and eminently worthwhile method to insure that the balance between petitioners' claims of irrelevance and privilege and plaintiffs' asserted need for the documents is correctly struck.[9] Indeed, this Court has

---

[7] See *Metros* v. *United States District Court for Dist. of Colo.*, 441 F. 2d 313 (CA10 1971).

[8] See *United States Board of Parole* v. *Merhige*, 487 F. 2d 25 (CA4 1973), cert. denied, 417 U. S. 918 (1974).

[9] Petitioners also assert, citing *Ford Co.* v. *Department of Treasury of Indiana*, 323 U. S. 459 (1945), and *Edelman* v. *Jordan*, 415 U. S. 651 (1974), that discovery of material which is actually the property of the State or its agencies is limited by the Eleventh Amendment. In view of our resolution of this case and the fact that petitioners did

long held the view that *in camera* review is a highly appropriate and useful means of dealing with claims of governmental privilege. *E. g., United States* v. *Nixon,* 418 U. S. 683, 706 (1974); *United States* v. *Reynolds,* 345 U. S. 1 (1953).

Insofar as discovery of the prisoners' files is concerned, it is true that the Court of Appeals' order denying the petition for a writ of mandamus with regard to those files was issued without any statement of reasons for the denial. However, there is no reason to think that by its order the Court of Appeals meant to foreclose petitioners from following precisely the same avenue with regard to the prisoners' files as it gave them the opportunity to follow with regard to the Adult Authority files.

We are thus confident that the Court of Appeals did in fact intend to afford the petitioners the opportunity to apply for and, upon proper application, receive *in camera* review. Accordingly the orders of the Court of Appeals are affirmed.

*So ordered.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.

---

not raise this issue either in the discovery proceedings in the District Court or in their petition for mandamus to the Court of Appeals we need not reach this issue.