**Application of Morris AMARNICK and Irving Amarnick, on behalf of themselves and all other purchasers of Securities of Tidal Marine International Corporation similarly situated, Petitioners.**

No. 1383, Docket 77–3030.

United States Court of Appeals, Second Circuit.

Submitted May 13, 1977.

Decided June 27, 1977.

Norris D. Wolff and Fredric A. Kleinberg, New York City (Kleinberg, Kaplan, Wolff & Cohen, New York City), for petitioners.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for Nat. Bank of North America.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for S. D. Leidesdorf & Co.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Shearson Hayden Stone, Inc.

Before CLARK, Associate Justice,* and LUMBARD and MESKILL, Circuit Judges.

PER CURIAM:

This class action is one of a number of federal securities laws actions that have arisen out of the financial collapse in 1972 of the Tidal Marine International Corporation, a commercial ship charterer. The defendants in this action, charged with helping to conceal Tidal Marine's poor financial condition, are the National Bank of North America ("NBNA"), which was Tidal Marine's commercial banker and a major lender to Tidal Marine in connection with ship acquisitions, and S. D. Leidesdorf & Compa-

---

* Mr. Justice Clark died on June 13, 1977, before this case could be decided. Pursuant to § 0.14 of the Rules of this Court, this petition is being determined by Judges Lumbard and Meskill, who are in agreement. Prior to his untimely death, Mr. Justice Clark had voted to deny the petition.

ny, an accounting firm which audited Tidal Marine's books. NBNA has, in turn, impleaded Shearson Hayden Stone Inc., successors-in-interest to Shearson Hammill & Company, Inc., investment bankers who sometimes made a market for Tidal Marine stock.

The suit was brought in the Eastern District of New York, and assigned to Judge Weinstein. After hearing argument, he granted a motion, pursuant to 28 U.S.C. § 1404(a), to transfer the action to the Southern District of New York, where a number of related actions were pending.

Class action plaintiffs Morris and Irving Amarnick petition for mandamus against this transfer of venue. They claim Judge Weinstein's transfer order was improper because one of the defendants, NBNA, could not originally have been sued in the Southern District. 12 U.S.C. § 94 provides that suits against a national banking association must be brought in a district where the bank is "established"; NBNA's place of organization is in the Eastern District. However, because NBNA has substantial offices in the Southern District and because it was these Southern District offices that were wholly responsible for NBNA's involvement in this case, it is possible that the suit could initially have been brought in the Southern District. Since the petitioners have not demonstrated that the transfer of venue was a clear and indisputable abuse of judicial power, we deny the petition for mandamus.

The first Tidal Marine action (the "Slade" action) was a class action on behalf of purchasers of Tidal Marine stock who had been solicited by Shearson. The suit was commenced in the Southern District in November 1972 against Shearson. In April 1973 two banks brought another Southern District action against Shearson in connection with a loan they had made to Tidal Marine. Shearson has impleaded NBNA in both these suits and has filed an action for contribution or indemnity and for damages.

Another suit—apparently a class action—was filed in the Southern District in 1974 against NBNA, Tidal Marine, and several individual defendants. In 1975, on motion by NBNA, Judge Carter transferred the case to the Eastern District on the ground that venue would not lie in the Southern District under 12 U.S.C. § 94. *Panaytopulos v. NBNA*, 74 Civ. 4903 (S.D.N.Y. March 27, 1975) (endorsement order).[1]

The Amarnicks commenced their action in June 1976 on behalf of purchasers of Tidal Marine stock who were not members of the *Slade* class. A similar action was also initiated in the Southern District by the class counsel in *Slade*, on April 1, 1977.

The defendants, including NBNA, sought to transfer the *Amarnick* case from the Eastern District to the Southern District under § 1404(a) in the interest of justice, the convenience of the parties, witnesses and two courts, and efficient judicial administration. The Amarnicks objected, however, pointing out that NBNA was "established" in the Eastern District and had originally refused to waive venue, and that therefore under *Hoffman v. Blaski*, 363 U.S. 335, 344, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), the action could not be transferred because it could not have been brought in the Southern District. Judge Weinstein, nevertheless, transferred *Amarnick* to the Southern District, and this mandamus action followed.

On an application for mandamus, the petitioners bear the burden of showing "a clear and indisputable" abuse of judicial power by the district court. *Banker's Life & Cas. Co. v. Holland*, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953); *Electric & Musical Industries, Ltd. v. Walsh*, 249 F.2d 308 (2d Cir. 1957). Appellate courts use writs of mandamus very sparingly, concluding that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary rem-

1. *Panaytopulos* is now pending before Judge Weinstein. At the hearing on the transfer motion involved here, Judge Weinstein indicated his inclination to transfer that case to the

Southern District. As of June 14, 1977, no motion under 28 U.S.C. § 1404(a) had been made in *Panaytopulos*.

edy." *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976). In *Kerr*, the Court emphasized the need to limit the use of mandamus strictly, using this language:

[M]andamus actions . . . "have the unfortunate consequence of making the [District Court] judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants [appearing] before him" in the underlying case. [Citations omitted]. More importantly, particularly in an era of excessively crowded lower court dockets, *it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation.* It has been Congress' determination since the Judiciary Act of 1789 that as a general rule "appellate review should be postponed . . . until after final judgment has been rendered by the trial court." [Citations omitted]. *A judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by that judgment of Congress.* Id. at 402–3, 96 S.Ct. at 2124. [Emphasis supplied].

Thus, mandamus is not proper here unless the transfer was a clear abuse of the district court's power. When the action challenged in a petition for mandamus is a transfer under 28 U.S.C. § 1404(a), an especially stringent test has been applied. *See A. Olinick & Sons v. Dempster Bros., Inc.*, 365 F.2d 439 (2d Cir. 1966); *Ackert v. Bryan*, 299 F.2d 65, 68 (2d Cir. 1962); *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir.), *cert. denied*, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950); *In re Josephson*, 218 F.2d 174 (1st Cir. 1954). Thus, in order to secure the writ, petitioners must demonstrate conclusively that 12 U.S.C. § 94 would have precluded them from suing NBNA originally in the Southern District. This they have failed to do.

Although § 94 protects a national bank from suit outside the district of its home office, see, e. g., *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 151 n.2, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976), that venue protection can be waived. As Mr. Justice Rehnquist said in a recent concurring opinion:

*Charlotte Nat. Bank v. Morgan*, 132 U.S. 141, 10 S.Ct. 37, 33 L.Ed. 282 (1889), recognized that the exemption of national banking associations from suit in counties or cities other than those in which they were located was a personal privilege of the associations which could be waived by them. *Id.*, at 145 [10 S.Ct. at 38, 33 L.Ed. at 283]. This exception to the otherwise mandatory nature of this venue limitation has been carried forward in the current recodification of the federally created privilege. *Michigan Nat. Bank v. Robertson*, 372 U.S. 591, 594 [83 S.Ct. 914, 915, 9 L.Ed.2d 961, 963] (1963). In *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 [60 S.Ct. 153, 84 L.Ed. 167] (1939), the Court held that by designating an agent for service of process within a State, a corporation gave its consent to be sued in federal court within that State notwithstanding the provisions of the predecessor to 28 U.S.C. § 1391(c), which accorded defendants in federal courts a privilege regarding venue essentially equivalent to that found in 12 U.S.C. § 94. I see no reason for concluding that the venue privilege extended by § 94 is of a different nature from that contained in § 1391, or that it may not be similarly waived by the conduct of a national banking association. Thus, I believe *Neirbo* establishes that petitioner National Bank could be deemed to have consented to being sued in Utah by providing an agent for service of process in that State or otherwise qualifying to do business therein according to Utah law.

*National Bank of North America v. Associates of Obstetrics & Female Surgery, Inc.*, 425 U.S. 460, 461–62, 96 S.Ct. 1632, 1633, 48 L.Ed.2d 92 (1976). In that case, a national banking association was sued in Utah, where it had no offices, no agents, and no regular course of business. Nevertheless the Court remanded for consideration of the plaintiffs' claim that the bank had waived the protection of section 94 by making a

loan to them in Utah and by seeking to place them in bankruptcy in a federal district court in Utah. *See also Reaves v. Bank of America,* 352 F.Supp. 745, 749–50 (S.D.Cal.1973); *Buffum v. Chase Nat'l City Bank,* 192 F.2d 58, 60–61 (7th Cir. 1951) (dictum).

Here, NBNA has agents for service in the Southern District and carries on most of its commercial loan operations from offices at 44 Wall Street, in the Southern District. Most important, these Southern District offices include NBNA's Ship Loan Department, which performed all of the alleged wrongful conduct in this action. Under these circumstances, we cannot say with certainty that the Amarnicks could not have initiated their action against NBNA in the Southern District. Accordingly, they have failed to demonstrate that Judge Weinstein's order was a clear abuse of discretion, which is required before the writ can issue.

The petition for a writ of mandamus is denied.