**STATE BOARD OF EDUCATION et al., Petitioners,**

v.

**Honorable Noel P. FOX, Chief Judge, United States District Court, Western District of Michigan, Respondent.**

No. 79–1002.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 4, 1980.

Decided April 21, 1980.

Frank J. Kelley, Atty. Gen. of Michigan, Robert Derengoski, Sol. Gen., Gerald F. Young, Asst. Atty. Gen., Lansing, Mich., for respondent.

Thomas I. Atkins, Atkins & Brown, Boston, Mass., Teresa Demchak, Cleveland, Ohio, Theodore Berry, General Counsel, NAACP, Special Contribution Fund, New York City, Duane Elston, Detroit, Mich., for plaintiffs NAACP.

Before EDWARDS, Chief Judge, MERRITT, Circuit Judge, and PECK, Senior Circuit Judge.

EDWARDS, Chief Judge.

■ This is a petition for a writ of mandamus directed to a District Judge in the Western District of Michigan. The District Judge, after hearing the Benton Harbor school case and being affirmed by this court on his finding that Benton Harbor School District (and other defendants) had been guilty of willful and intentional racial segregation, on petition of the plaintiffs in the case before him held hearings on the remedy aspect of the litigation. In the midst of these he entered an order requiring the present petitioners, the State Board of Education and its Superintendent and the Benton Harbor Intermediate School District to conduct a survey of possible unconstitutional segregation in all of the school districts in the county that were not subject to any findings of constitutional violations and desegregation orders. After the District Judge declined to certify this order as a controlling question of law, the State Board and Benton Harbor Intermediate School District filed an application for a writ of mandamus against the District Judge seeking to forbid him from proceeding with his announced plan for the Michigan Board of Education and the Berrien County Intermediate School District to survey all the school districts in Berrien County to determine whether any of those who were not currently before the court had been guilty of racially restrictive constitutional violations.

The District Judge had previously found the State Board and the Benton Harbor Intermediate School District and two small school districts to have been guilty of constitutional violations in relation to creating segregation in Benton Harbor.

The precise question which petitioners seek to present is:

Whether the District Judge's refusal to certify, and thus forever to remove the order from effective appellate review, was an inexcusable usurpation and flagrant abuse of discretion that warrants mandamus.

Petitioners not only sought the extraordinary remedy of mandamus but also sought a stay of the survey order pending decision on issuance of the writ. This court granted the stay, ordered respondent District Judge to file a response and scheduled briefing and oral hearing to determine whether or not the District Judge's order was consistent with the prohibition on cross-district remedies contained in *Milliken v. Bradley*, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974) (*Milliken I*).

Examination of the question just posed leads us to the conclusion that the answer is anything but clear. Contrary to the situation in *Milliken I*, the defendants that have been ordered to conduct surveys have themselves been found guilty of unconstitutional segregation within the Benton Harbor School District. Moreover, unlike the situation involved in *Milliken I* where the defendant suburban school districts have never been parties to the litigation, here, the Michigan State Board of Education and the Benton Harbor Intermediate School District are both within the jurisdiction of the District Court and subject to its orders. Further, examination of the Michigan Constitution and laws applicable to the Michigan State Board of Education suggests that it has under state law power to conduct the survey ordered (and to order the Benton Harbor Intermediate School District to participate therein) and that its failure to do so where it is taking somewhat similar steps in relation to other school districts may constitute Fourteenth Amendment equal protection violations.

■ We do not now decide these difficult questions since it is clear that mandamus is not available as a means of reviewing unresolved and difficult questions of law.

■ In *United States v. United States District Court*, 444 F.2d 651 (6th Cir. 1971), aff'd 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), this court recognized and the United States Supreme Court affirmed that only "extraordinary circumstances" would justify issuance of a writ of mandamus.

In *Kerr v. United States District Court*, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976), the Supreme Court laid down the applicable rules:

The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations. *Will v. United States,* 389 U.S. 90, 95 [88 S.Ct. 269, 273, 19 L.Ed.2d 305] (1967); *Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 382–385 [74 S.Ct. 145, 147–149, 98 L.Ed. 106] (1953); *Ex parte Fahey,* 332 U.S. 258, 259 [67 S.Ct. 1558, 1559, 91 L.Ed. 2041] (1947). As we have observed, the writ "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Will v. United States, supra,* 389 U.S., at 95 [88 S.Ct., at 273], quoting *Roche v. Evaporated Milk Assn.,* 319 U.S. 21, 26 [63 S.Ct. 938, 941, 87 L.Ed. 1185] (1943). And, while we have not limited the use of mándamus by an unduly narrow and technical understanding of what constitutes a matter of "jurisdiction," *Will v. United States, supra,* 389 U.S., at 95 [88 S.Ct., at 273], the fact still remains that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Ibid.*

Our treatment of mandamus within the federal court system as an extraordinary remedy is not without good reason. As we have recognized before, mandamus actions such as the one involved in the instant case "have the unfortunate consequence of making the [district court] judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants [appearing] before him" in the underlying case. *Bankers Life & Cas. Co. v. Holland, supra,* 346 U.S., at 384–385 [74 S.Ct., at 149], quoting *Ex parte Fahey, supra,* 332 U.S., at 260 [67 S.Ct., at 1559]. More importantly, particularly in an era of excessively crowded lower court dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation. It has been Congress' determination since the Judiciary Act of 1789 that as a general rule "appellate review should be postponed . . . until after final judg-ment has been rendered by the trial court." *Will v. United States, supra,* 389 U.S., at 96 [88 S.Ct., at 274]; *Parr v. United States,* 351 U.S. 513, 520–521 [76 S.Ct. 912, 917–918, 100 L.Ed. 1377] (1956). A judicial readiness to issue the writ of mandamus in anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by that judgment of Congress.

As a means of implementing the rule that the writ will issue only in extraordinary circumstances, we have set forth various conditions for its issuance. Among these are that the party seeking issuance of the writ have no other adequate means to attain the relief he desires, *Roche v. Evaporated Milk Assn., supra,* 319 U.S., at 26 [63 S.Ct., at 941], and that he satisfy "the burden of showing that [his] right to issuance of the writ is 'clear and undisputable.'" *Bankers Life & Cas. Co. v. Holland, supra,* 346 U.S., at 384 [74 S.Ct., at 148], quoting *United States [ex. rel. Bernardin] v. Duell,* 172 U.S. 576, 582 [19 S.Ct. 286, 287, 43 L.Ed. 559] (1899); *Will v. United States, supra,* 389 U.S., at 96 [88 S.Ct., at 274]. Moreover, it is important to remember that issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed. *Schlagenhauf v. Holder,* 379 U.S. 104, 112 n. 8 [85 S.Ct. 234, 239, 13 L.Ed.2d 152] (1964); *Parr v. United States, supra,* 351 U.S. at 520 [76 S.Ct., at 917]. See also *Technitrol, Inc. v. McManus,* 405 F.2d 84 (CA8 1968), cert. denied, 394 U.S. 997 [89 S.Ct. 1591, 22 L.Ed.2d 775] (1969); *Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949 (CA9 1968).

*Id.* at 402–03, 96 S.Ct. at 2123–2124 (Footnote omitted).

We recognize, of course, as stated above that appellants' petition for relief does not seek adjudication now of these somewhat formidable questions. Rather it seeks our writ directing the District Judge to issue the certification of the questions for appeal under 28 U.S.C. § 1292(b). This statute

allows for interlocutory appeal (on such certification) of "a controlling question of law" decision of which "may materially advance the ultimate termination of the litigation." Under *Milliken I, supra,* however, no order may be entered against a non-party school district in the relief aspect of a desegregation case brought against another school district. 418 U.S. at 744–45, 754, 94 S.Ct. at 3126–27, 3131. This being true, we perceive no possibility of our writ deciding a controlling question of law in the Benton Harbor segregation case or materially advancing ultimate termination of that litigation.

The petition for writ of mandamus is denied.