*262 TRAXLER, Circuit Judge,
concurring:
I concur in the results reached in the opinion of my friend Judge King. I write separately because my reasoning is somewhat different.
I.
This appeal began with Cherrix’s motion for an order, solely under the authority of 21 U.S.C. § 8^8(q), directing the Commonwealth to make the seminal fluid available for DNA retesting. At the time of the motion, Cherrix had yet to file a petition for relief under § 2254. After a hearing on the merits of the motion filed by Cher-rix, and after Cherrix filed his petition for relief under § 2254, the district court issued its January 9, 2001 Order which granted the motion. In my estimation, the legal basis for this order directing retesting of the evidence was not particularly clear; by contrast, it was clear that the court was granting funding pursuant to § 848(q). Indeed, although the January 9, 2001 Order contained a general citation to Rule 11 of the Rules Governing Section 2254 Cases, the district court appeared to draw its authority to direct the Commonwealth in this regard primarily from § 848(q), a statute aimed at providing adequate legal services for indigent capital defendants. Given the language of the January 9, 2001 Order and the fact that § 848(q) was the sole basis for Cherrix’s motion, the Commonwealth’s belief that the district court acted beyond its power is understandable. And, apart from the substantial legal questions regarding the propriety of retesting in the first place, the order was of substantial concern to the Commonwealth because in very general terms it ordered the assistant attorney general and the state clerk of court to “make available to Petitioner any bodily fluids or swabs seized from Tessa Van Hart, or the Petitioner for testing to the laboratory as directed' by the Court.” The Commonwealth feared a loss of the chain of custody and contamination or destruction of this evidence. The January 9, 2001 Order did not incorporate any safeguards that would diminish these risks.
In light of these concerns, the Commonwealth immediately appealed the district court’s order under 28 U.S.C.A. § 1292(a)(1), while at the same time petitioning this court for a writ of mandamus to “vacate the district court’s January 9th order entered pursuant to 21 U.S.C. § 848(q) directing state officials to locate, preserve and turn over for DNA testing bodily fluids taken from the victim and Cherrix.”
Under Rule 21(b)(4) of the Federal Rules of Appellate Procedure, we invited the district court to submit a response to the Commonwealth’s petition for a writ of mandamus. This rule provides as follows:
The court of appeals may invite or order the trial-court judge to address the petition or may invite an amicus curiae to do so. The trial-court judge may request permission to address the petition but may not do so unless invited or ordered to do so by the court of appeals.
We thereafter received from the district court a very detailed statement expanding upon the factual bases and the legal reasoning for its decision (“the Supplemental Opinion”). In the Supplemental Opinion, the district court explained that it was not issuing its order solely under the authority of 21 U.S.C. § 848(q), stating that its order directing DNA re-testing was issued pursuant to the “good cause” standard contained in Habeas Rule 6(a). Unlike the January 9, 2001 Order, the Supplemental Opinion identified various protective measures the district court intended to employ to maintain the physical integrity of the evidence and safeguard the chain of custody.
*263 Were it not for the information in the Supplemental Order, however, I would hold that the January 9, 2001 Order, standing alone, was immediately appeal-able. Without clarification from the Supplemental Opinion, the January 9, 2001 Order, literally interpreted, required the Commonwealth to turn over the samples directly to the defendant for testing. This would have broken the chain of custody and created a situation, if only in testing, in which Cherrix could have contaminated and even destroyed the evidence. In my judgment, the dangers attendant to an apparently uncontrolled release of the evidence would have fully warranted an interlocutory appeal and would have mandated our intervention.
The Commonwealth urges us not to consider the Supplemental Opinion on the grounds that the district court essentially amended its opinion and substituted new legal grounds for its conclusions, even after we had granted the Commonwealth a stay pending appeal. Considering the fact that this panel specifically invited the district court to address the Commonwealth’s petition for a writ of mandamus, it would be strange indeed if the district court overstepped its bounds by doing just that. Furthermore, although Appellate Rule 21(b)(4) pertains only to ‘Writs of Mandamus and Prohibition, and Other Extraordinary Writs,” I believe that it is appropriate for us to consider the Supplemental Opinion with respect to the Commonwealth’s appeal under 28 U.S.C. § 1292(a)(1) as well. As Judge King explained, the district court retained jurisdiction to act on matters “in aid of the appeal.” Fobian v. Storage Tech. Corp., 164 F.3d 887, 890 (4th Cir.1999) (internal quotation marks omitted); In re Grand Jury Proceedings Under Seal, 947 F.2d 1188, 1190 (4th Cir.1991). This principle is based on notions of judicial economy and efficiency. See id. We considered the mandamus issue simultaneously with the appeal question, and thereby had before us the Supplemental Opinion. We now understand the district judge has considered a number of safeguards that he intends to implement in order to protect the evidence. It makes little sense to consider the Supplemental Order for purposes of resolving the petition for a writ of mandamus but then close our eyes to it concerning whether review is available under 28 U.S.C.A. § 1292(a)(1). I believe the information in the Supplemental Order should be considered if for no other reason than because, as a practical matter, it answers the questions of the Commonwealth and assures that the handling of this evidence will be commensurate with the needs of both parties.
In light of the Supplemental Opinion, I am satisfied the order of the district court will not result in “serious, perhaps irreparable, consequence” and I do not believe that the order can be “effectually challenged” only by an immediate appeal. Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) (internal quotation marks omitted). Thus, the Commonwealth is not entitled to immediate review.
II.
Likewise, I concur that the Commonwealth is not entitled to a writ of mandamus. In áddition to the reasons stated by Judge King, mandamus relief is not appropriate because the district court was acting on a matter entrusted to its discretion. As the majority opinion rightly points outs, the relief provided by the issuance of a writ of mandamus is extraordinary in nature, and I agree the Commonwealth is not entitled to it. The traditional use of the writ of mandamus has been “to confine an inferior court to a lawful exercise of its prescribed jurisdiction.” Kerr v. United *264 States Dist. Ct. for the N. Dist. of Cal., 426 U.S. 394, 402, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976) (internal quotation marks omitted). Although writs of mandamus or prohibition may of course be employed to compel or prohibit action by those outside of the judiciary, such as executive agencies or officials, see United States ex rel. Rahman v. Oncology Assocs., 198 F.3d 502, 515 (4th Cir.1999) (affirming in part the issuance of a writ of mandamus to the Health Care Financing Administration), additional concerns arise when mandamus relief is sought against a lower court, particularly when it is sought in conjunction with an ongoing case.
Perhaps the most obvious concern in this context is that parties will use a writ of mandamus as a surrogate for the appellate process. See Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382-83, 74 S.Ct. 145, 98 L.Ed. 106 (1953). Even if the district court issues an interlocutory order that is wrong on the merits and that results in substantial inconvenience, something more is required to justify mandamus relief. If not, “then every interlocutory order which is wrong might be reviewed under the All Writs Act” and the function of the writ of mandamus “would be enlarged to actually control the decision of the trial court rather than used in its traditional function of confining a court to its prescribed jurisdiction.” Id. at 383, 74 S.Ct. 145. The other major reason that mandamus relief is discouraged in the context of ongoing litigation is that such petitions tend to pit the petitioner and the district court against each other. In essence, the district court becomes a litigant, cast in an adversarial role against the mandamus petitioner, who remains a litigant in the pending lawsuit. See Kerr, 426 U.S. at 402, 96 S.Ct. 2119.
Accordingly, a mandamus petitioner can show he is entitled to the writ only by demonstrating the lower court committed a “clear abuse of discretion or conduct amounting to usurpation of the judicial power.” Mallard v. United States Dist. Ct. for the S. Dist. of Iowa, 490 U.S. 296, 309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989) (internal citations, alterations and quotation marks omitted). And, as Judge King makes clear, even if the petitioner can demonstrate an abuse or usurpation of judicial power, there are additional hurdles to make certain that mandamus relief is available only in extraordinary circumstances: there must be no “adequate alternative means to obtain the relief’ sought in the mandamus petition and the “right to issuance of the writ [must be] clear and indisputable.” Id. (internal quotation marks omitted).
It is substantially more difficult to demonstrate the court usurped power beyond its authority when the mandamus petition is directed at a matter committed to the discretion of the district court. See In re Catawba Indian Tribe of South Carolina, 973 F.2d 1133, 1136 (4th Cir.1992) (en banc). Almost by definition, a court that is deciding a matter within its discretion is acting within its prescribed authority, even if the court technically makes the wrong decision. Thus, “[t]he writ of mandamus is not to be used when the most that could be claimed is that the district.courts have erred in ruling on matters within their jurisdiction.” Schlagenhauf v. Holder, 379 U.S. 104, 112, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) (internal quotation marks omitted).
The Supplemental Opinion indicates that the court granted only Cherrix’s request for funding pursuant to 21 U.S.C. § 848(q), but that it ordered the Commonwealth to make the forensic evidence available for testing for “good cause” under Habeas Rule 6(a). Rule 6(a) permits a party “to invoke the processes of discovery available under the Federal Rules of Civil *265 Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so.” The district court’s decision to permit or deny the discovery of evidence under Rule 6(a) is clearly an exercise of the court’s discretion. Even if the court erroneously determined that “good cause” exists, the court has merely “erred in ruling on [a] matterf ] within [its] jurisdiction,” ScMagenhauf, 379 U.S. at 112, 85 S.Ct. 234 (internal quotation marks omitted), and mandamus relief is not available.
Again, it bears noting that, in my view, the Commonwealth’s belief that the district court acted beyond its power was not entirely misplaced, especially before the district court issued its Supplemental Opinion. Indeed, the January 9, 2001 Order does not specifically cite Rule 6(a) and it does not use the phrase “good cause,” although it does contain a general reference to the applicability of the Federal Rules of Civil Procedure through Habeas Rule 11. And, Cherrix’s motion for DNA retesting and for funding to accomplish the retesting was made entirely under the auspices of § 848(q), not Habeas Rule 6(a). Indeed, at the time that Cherrix filed his motion, the district court would have had no authority to grant it under Rule 6 because Cherrix had not yet filed his § 2254 petition. Thus, prior to the issuance of the district court’s Supplemental Opinion, the Commonwealth’s belief that § 848(q) was the basis for the entire January 9, 2001 Order — not just the portions related to funding — was not unreasonable. Of course, § 848(q) may provide authority for the court to authorize the release of federal funds for services in conjunction with Cherrix’s § 2254 petition, but it grants no authority whatsoever for a district court to issue a discovery-type order.
In the final analysis, however, if “good cause” does not support DNA retesting, the Commonwealth can have its concerns effectively addressed on appeal after the district court’s decision on the merits has become final. I therefore concur that we cannot issue a writ of mandamus under the circumstances.