HAGEL, Judge,
dissenting:
Judge Lance has authored a dissent that is fully supported by the law, and I join it *219 without reservation. However, I would like to emphasize that, by concluding that the Board’s referral decisions are appeal-able, the majority has foreclosed future appellants from challenging those decisions via petitions. See Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953) (“Extraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial.”) (citations omitted). As ably pointed out by Judge Lance, the average time for the Court to process an appeal is 10.9 months, whereas the average time to process a petition is only 1.8 months. See ante at 214-15. Consequently, the majority has needlessly injected over 9 months of avoidable delay into the process of ensuring that claims are expeditiously adjudicated by VA.
In any event, at times the essence of disagreement can best be expressed without citing authority, resorting to legal maxims and jargon, or even using Latin. Sometimes it is best to rely instead on just plain common sense. I believe that this case presents such a situation. Therefore, I offer, in my own unconventional way,[8] a less legalistic rationale for disagreeing with the majority’s opinion.[9]
The Judges gathered one day bedecked in their robes four did say, “Most cases are boring. We need something rip-roaring to establish a new vérité.”
“We must choose a difficult subject, our reasoning to which none can object. The issue must be obscure, but a real problem du jour, with an outcome few would suspect.”
“Of jurisdiction we don’t have enough, to get more we know will be tough.” Then they scrunched up their faces and pounded their maces and cried, “Where can we find such stuff?!”
Then the Board made an unusual slip, referral not remand, the quip. It now had arrived, the case for which they contrived, more power they could use it to grip.
“Speed is required,” they pled, “Only remand puts vets ahead ...” But the problem, you see, the reverse comes to be when the Court sticks its nose in instead.
They then snatched the case from YA. “Because we can do it,” they say. They acted with speed and ignored the vet’s need, increasing by six times the delay
The majority wets the vets’ ammunition by retarding their right to petition.
*220 The undeniable effect, a barrier they erect to obtaining relief with expedition.
Oh, yes, I have read their tome. But well enough should be left alone. Precedent was not heeded, a final decision once was needed, but now it need not be shown.
For some the case is of import; over the din, their voices report lawyers shouting with glee: “We can now charge a fee when before we would come up short!”
The parties deserve commendation for agreeing to end litigation. But unlike the majority, I think we lack the authority to grant their motion for termination.
But wait! There are Judges two, who know the right thing to do is to keep their hands off, keep counsel from the trough, and faster give veterans their due.
Their concern for the law is so real, their disappointment is hard to conceal. Into the sunset they ride, white-hatted Judges side by side, realizing there will be no appeal.
The ode now draws to a close. It was not hard to compose. All the words, you see, simply came to me, when the errors I sought to expose.

. I have considered the propriety of writing my dissent in verse and have concluded that, in this case, poetry is the best method for effectively conveying my disagreement with the majority to the Court’s broad array of constituencies. See Mary Kate Kearney, The Propriety of Poetry in Judicial Opinions, 12 Widener L.Rev. 597, 604 (2003) (noting that a reason for judicial poetry is to "make the law more accessible to the general public,” particularly those without formal legal training).

. I have the utmost admiration and respect for each of my fellow Judges: they are professionals all. My dissent is not meant to be a criticism of them, but only an expression of my professional disagreement with the result they have reached in this instance. I trust all who read my statement will take it in that manner. There is clearly hyperbole in some of this writing, but I do not retreat from the moral of the story. Although the result in this case — changing the Board’s decision from referral to remand — was clearly correct, it was accomplished by reaching beyond the Court’s authority to justify an end and to the detriment of appellants to come. In the future, appellants who wish to correct similar errors must file an appeal here and will thus be subject to all the trappings that come with it.