**Cynthia ORBOVICH, Plaintiff,**

**v.**

**MACALESTER COLLEGE, Defendant.**

**Civ. No. 4–87–973.**

United States District Court,
D. Minnesota,
Fourth Division.

March 9, 1988.

Ellen Sampson, Kathleen Graham, Minneapolis, Minn., for plaintiff.

Phyllis Karasov, Bruce Kiernat, St. Paul, Minn., for defendant.

## ORDER

JANICE M. SYMCHYCH, United States Magistrate.

The above matter came on for hearing before the undersigned on January 6, 1988 upon plaintiff's motion to compel responses to document requests, interrogatories, and requests for admission, and for the costs and fees incurred in bringing the motion. A Rule 16 scheduling conference was had at the same time. Plaintiff was represented by Ellen Sampson, Esq., and Kathleen Graham, Esq.; defendant was represented by Phyllis Karasov, Esq., and Bruce Kiernat, Esq.

## PROCEDURAL AND FACTUAL BACKGROUND

This is an action pursuant to Title VII, alleging sex discrimination in plaintiff's denial of tenure; the complaint also sets forth pendent claims alleging breach of contract and detrimental reliance. In June, 1987, plaintiff, a political science professor, was denied tenure and notified that the 1987–88 academic year would be her last at Macalester. She asserts that the Political Science Department and Faculty Personnel Committees both recommended that she be tenured, but that the Provost and President denied her. In an internal appeal to the Faculty Advisory Council, the president was advised to reverse the decision, but did not. Based upon her argument at the discovery motion hearing, it appears that she claims an individual instance of discrimination respecting her tenure denial, resting in part upon a theory of disparate treatment of women faculty at Macalester.

Plaintiff first brought suit in Ramsey County District Court on September 9, 1987, and served written discovery on September 24, 1987. Defendant moved for a stay of the proceedings pending the outcome of an earlier filed EEOC charge; the motion was denied and defendant was ordered to serve its discovery responses by November 18, 1987. Plaintiff received an early right-to-sue letter from the EEOC on October 26, 1987, and then filed this action on November 6, 1987. She served the same written discovery which was then the subject of the Ramsey County order. On November 23, 1987, defendant served its responses, including objections to 6 of the 7

document requests, 4 of the 11 interrogatories, and 2 of the requests for admission. On November 29, 1987, the parties stipulated to a protective order and agreed not to proceed with discovery in the state action. Following a series of correspondence and discovery dispute conferences, which narrowed the number of items in dispute, this motion followed.

The motion raises hotly contested issues about the extent to which tenure decisionmaking is a confidential process, and the extent to which personnel decisions about other faculty members may be discovered. It is the conclusion of the court that in the context of a claim of discriminatory treatment, the undeniably significant interest of an academic institution in the confidentiality of its tenure decisionmaking must give way to the plaintiff's right to discover the facts surrounding her denial of tenure. The court expressly declines to find that any academic privilege protects such information. The great majority of plaintiff's discovery motion will be granted.

## DISCUSSION

### A. *Academic Privilege*

Defendant asserts that its tenure decisions are predicated upon a promise of confidentiality given to faculty members and outside reviewers who participate in the recommendation process. It urges that this confidentiality extends to tenure review files of all its faculty members. Defendant also objects to disclosure of the contents of faculty personnel files. The crux of defendant's objection stems from its claim that faculty personnel matters are so critical to the performance of the academic function that they are cloaked with a qualified privilege. In raising this claim, defendant relies upon *EEOC v. University of Notre Dame*, 715 F.2d 331 (7th Cir.1983) and *Gray v. Board of Higher Education*, 692 F.2d 901 (2nd Cir.1982). In *Notre Dame*, the Court held that a particularized-need standard, equal to that required for disclosure of grand jury secrets, was applicable to the discovery in civil litigation of the identity of tenure review committee members. In *Gray*, the Court held that

the confidentiality of the faculty peer review system should be protected by imposition of a balancing test, above and beyond the liberal threshold of discoverability under the Federal Rules of Civil Procedure. In so evaluating the discoverability threshold for confidential tenure-related information, these courts observed the vital role of academic excellence in our society, and the undeniable contribution of the confidential peer review process to that end. *Notre Dame,* at 336; *Gray,* at 903. *See also, Sweezy v. New Hampshire,* 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957), *reh. denied,* 355 U.S. 852, 78 S.Ct. 7, 2 L.Ed.2d 61 (1957), where, in the much-cited concurring opinion, Justice Frankfurter, at 263, noted four essential "freedoms" of a university, including the freedom to determine "who may teach, what may be taught, how it shall be taught and who may be admitted to study." So, based upon these authorities, this policy interest, and the threatened harm to the frank resolution of its own tenure decisions, defendant resists disclosure of both plaintiff's tenure review file and the tenure and personnel files of other faculty members. It argues that plaintiff has made an insufficient showing that she was discriminated against, so as to warrant the disclosure.

Although this question has not yet been addressed by the Eighth Circuit Court of Appeals, the great weight of direct authority on the issue goes against defendant as does the relevant authority on the broader subjects of privilege and discovery. The Fifth Circuit, in *Dinnan v. Board of Regents,* 661 F.2d 426 (1981), held that no privilege allowed the refusal of a college professor to answer deposition questions about his vote on a faculty promotion. Noting that the First Amendment implications of university freedoms arise most directly in cases involving censorship of ideas, the Court found no constitutional basis under Rule 501 of the Federal Rules of Evidence for the creation of the claimed privilege of academic freedom. It treated the matter purely as a question of evidence law, and found the discovery sought to be

relevant to the Title VII claim of discriminatory failure to promote. In an investigative proceeding by the EEOC, the Third Circuit likewise rejected the privilege and balancing holdings of *Notre Dame* and *Gray.* *EEOC v. Franklin & Marshall College,* 775 F.2d 110, at 114 (1985), *cert. denied,* 476 U.S. 1163, 106 S.Ct. 2288, 90 L.Ed.2d 729 (1986). In doing so, it noted that the EEOC's subpoena authority extended to all relevant materials, and evaluated the objection to disclosure on that basis. It declined the invitation to hold the EEOC to a higher discovery standard than that of litigants in a civil dispute, and found that the confidential notes pertaining both to the tenure decision in issue and other tenure decisions at the college could constitute evidence of discriminatory intent or pretext. In reaching this conclusion, the Court gave sensitive consideration to the paramount interest in academic excellence, and the delicacy of tenure decisions in small academic institutions, of which a good number were *amici curiae.* Any mechanism which would prevent access to such information, according to the Court, would allow alleged perpetrators of discrimination to pick and choose the evidence available against them.

These opinions are reflective of recent Supreme Court decisions in *EEOC v. Shell Oil Co.,* 466 U.S. 54, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) and *Hishon v. King & Spaulding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In *Shell Oil,* the Supreme Court dispensed with any notion that the EEOC must establish viability of the discrimination allegation as a prerequisite to enforcement of its subpoena. Such a requirement would impair the orderly progress of discovery by permitting threshold litigation about the adequacy of the proof of discrimination. *Id.,* 466 U.S. at 71, 81, 104 S.Ct. at 1632, 1637. In a private Title VII action, the same impediment to the intended self-execution of discovery under the rules would arise, embroiling the court in threshold decisions on the merits, prior to the time of trial. Such unusual treatment of a civil litigant is not warranted on the grounds that her adversary is an academic institution. "Exceptions to the demand for every man's evidence are not lightly created nor expansively construed." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). Although academia has an acknowledged higher interest in the unimpeded selection of those who are best qualified to educate, even this implied freedom of association is well understood to be limited by Congressional enactments barring discrimination. *Hishon,* 467 U.S. at 80, n. 4, 104 S.Ct. at 2236, n. 4, J. Powell, concurring.

■ The rights of plaintiffs to obtain essential information in an effort to establish discrimination claims is a necessary infringement on the confidential peer review process. *Rollins v. Farris,* 108 F.R. D. 714 (E.D.Ark.1985). After a thorough explication of the issue, Chief Judge Franklin Waters compelled the production of tenure files and deposition answers in a Title VII and § 1983 case, deciding to reject the approaches of *Notre Dame* and *Gray,* and choosing instead to follow *Franklin & Marshall College.* For the reasons set forth in his opinion, and above, the undersigned concludes that the *Rollins* approach is the correct one. As acknowledged by Judge Waters, not every discrimination case warrants such disclosure. *Id.* at 719. However, in this case, as in *Rollins,* the information sought does have an essential bearing on plaintiff's claims. Here, it is asserted that departmental members and faculty advisory committees recommended that plaintiff be tenured. Set against the assumption that peer review is at the heart of the tenure decision, the discovery sought by plaintiff is clearly within the scope of Rule 26(b), and goes to the issue of pretext. Interestingly, the Court in *Gray,* although employing a higher threshold for discovery, concluded that the contents of the tenure file were important to plaintiff's ability to prove his case, and ordered discovery.

The same reasoning has been used to order discovery of medical peer reviews over the objections of physicians and hospi-

tals, even in some instances with statutes providing for confidentiality. *Quinn v. Kent General Hospital,* 617 F.Supp. 1226 (D.Del.1985); *Schafer v. Parkview Memorial Hospital,* 593 F.Supp. 61 (N.D.Ind. 1984); *Dorsten v. Lapeer County General Hospital,* 88 F.R.D. 583 (E.D.Mich.1980); and *Feminist Women's Health Center v. Mohammad,* 586 F.2d 530 (5th Cir.1978), *reh. denied,* 591 F.2d 1343 (1979) and *cert. denied,* 444 U.S. 924, 100 S.Ct. 263, 62 L.Ed.2d 180 (1979).

The protections built into the Federal Rules of Civil Procedure are sufficient to govern the competing interests of the parties here, during the discovery process. Because the contents of the tenure and personnel files sought by plaintiff are indeed confidential, and procured by a private promise of such confidentiality, the discovery will be subject to protective order, barring any and all further disclosure absent order of the court. FRCP 26(c).

Defendant's objections based upon academic privilege and confidentiality are, therefore, overruled.

### B. *Comparative Evidence*

■ Defendant objects to production of any information regarding other faculty members other than what has been given in response to date. It claims that the comparative treatment of other employees does nothing to determine the propriety of plaintiff's tenure denial, and is not therefore calculated to lead to the discovery of admissible evidence. Defendant is incorrect and the information will be compelled.

■ In order to prosecute a Title VII action, a plaintiff bears the burden of persuasion through all facets of the case. She must first make out a prima facie case of discrimination, at which time the burden of production shifts to the defendant to show a legitimate reason for the action taken. Then the production burden is on plaintiff to demonstrate that defendant's position is pretextual. *Chambers v. Omaha Girls Club,* 834 F.2d 697 (8th Cir.1987), citing

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 803–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). Proof of discrimination may be based upon the facts surrounding an individual incident, or upon a showing of either disparate treatment or disparate impact. *C.f. Craik v. Minnesota State University Board,* 731 F.2d 465 (8th Cir.1984). It is clear from plaintiff's arguments at the hearing that, at the very least, she is pursuing the first two of these approaches.

In *Craik* the Court held that it was error for the trial court not to consider the comparative treatment of the two genders for faculty chair positions at a university, for the purpose of deciding plaintiff's individual claim of discrimination. The Court expressly held that the comparative and statistical proof bore on both the individual claims and the class claims. It observed that statistical evidence alone may suffice as proof of a pattern and practice of discrimination. At 477–79. It also noted that the voting of faculty members evidenced gender discrimination on the individual claims. *Id.* at 482–83. It is quite indisputable then, that the information sought by plaintiffs about other faculty members is clearly calculated to lead to the discovery of admissible evidence.

■ Despite the difficulty of making comparisons in the case of professional and academic employment decisions, such evidence is relevant in a case alleging discrimination in tenure denial. *Namenwirth v. Board of Regents,* 769 F.2d 1235, at 1241 (7th Cir.1985), *cert. denied,* 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986). In fact, if a plaintiff who has been denied tenure shows that some significant portion of the faculty or other scholars favored her tenure, and that there was a simultaneous promotion of males, it may constitute prima facie evidence of discrimination, sufficient to shift the burden to defendant. *Zahorik v. Cornell University,* 729 F.2d 85, at 93–94 (2nd Cir.1984). The case relied

upon by defendant for its argument of irrelevancy even acknowledges that evidence of general patterns of discrimination are relevant to proof in an individual plaintiff's claim for disparate treatment. *Lieberman v. Gant*, 630 F.2d 60, at 64 (2nd Cir.1980). The decision in *Lieberman* dealt with the exclusion at trial of such comparative evidence, and had nothing to do with the discoverability question now before the court.

For these reasons then, defendant's relevancy objection to information regarding other faculty and employee decisions is overruled.

### C. *Miscellaneous*

■ Defendant has interposed an objection, in addition to those above, that production of much of the discovery sought is unreasonably burdensome. The objection is not well taken. The production of discovery materials in litigation is often a costly and burdensome enterprise. It can involve many hours of labor unrelated to any other business purpose. The resistance to discovery for those reasons will not be sustained, however, unless the discovery sought is found to be unreasonably burdensome. *Schachar v. American Academy of Ophthalmology*, 106 F.R.D. 187, 190 (N.D. Ill.1985); *Al-Jundi v. Rockefeller*, 91 F.R. D. 590, 594 (W.D.N.Y.1981); and *Park Community Ass'n v. Wauwatosa Realty Co.*, 486 F.Supp. 838, 845 (D.Wisc.1980). The foregoing authorities on the subjects of academic privilege and comparative proof in discrimination cases support plaintiff's view that the discovery here is necessary to plaintiff's pursuit of the case. With the exception of Document Request No. 5 and Interrogatory No. 32, which are overbroad, the requests are reasonably framed and will be enforced.

Plaintiff also seeks responses which comport with FRCP 36 to her Requests for Admission No. 17 and No. 18. Upon review, the court concurs that defendant's responses are not proper, and that defendant must serve compliant responses, providing either a full denial or admission, or an explanation why it cannot do so.

### D. *Sanctions*

Plaintiff seeks the costs and fees incurred by her in connection with this motion. Given the threshold issues about the scope of discovery, the early stage of the litigation, and the absence of Circuit authority on the main issue involved, the court is disinclined to find that defendant's position was not substantially justified. Accordingly, the request for sanctions is denied.

Therefore, based upon the foregoing, the briefs and arguments of counsel, and all the files and proceedings herein,

IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel discovery responses to Document Request No. 1, Requests for Admission No. 17 and No. 18, and Interrogatories Nos. 24, 25 and 33, is GRANTED;

2. Plaintiff's motion to compel a response to Document Request No. 5 as narrowed to exclude "suggested" leave policies, is GRANTED;

3. Plaintiff's motion to compel a response to Interrogatory No. 32, because, as phrased, it is overbroad, is DENIED;

4. The responses compelled above shall be served in a form which fully comports with the applicable provisions of the Federal Rules of Civil Procedure no later than April 15, 1988; and

5. Plaintiff's motion for costs and fees is DENIED.