**CERAMIC CORP. OF AMERICA, et al., Plaintiffs,**

v.

**INKA MARITIME CORPORATION INC., et al., Defendants.**

No. CV 91–3281–KN(RMC$_x$).

United States District Court, C.D. California.

July 12, 1995.

Louis G. Juliano, Bigham Englar Jones & Houston, New York City, Paul Joseph Marron, Long Beach, CA, for movant.

John D. Giffin, Keesal Young & Logan, San Francisco, CA, for responding party.

## MEMORANDUM DECISION AND ORDER RE MOTION TO QUASH SUBPOENA DUCES TECUM SERVED ON SEA RIVER MARITIME, INC.

CHAPMAN, United States Magistrate Judge.

On June 28, 1995, Captain Mitchell Stoller (hereinafter Stoller) filed a Notice of Motion and Motion to Quash the Subpoena Duces Tecum served on the Custodian of Records for Sea River Maritime, Inc., and for Protective Order; Supporting Memorandum of Points and Authorities, and declarations of Stoller and David A. St.Clair. On July 5, 1995, defendants filed a Memorandum of Points and Authorities in Opposition to Motion to Quash Subpoena Duces Tecum. On July 7, 1995, Stoller filed a Reply Memorandum of Points and Authorities. The parties stipulated, and the Court ordered, that the pending motion would be consolidated with a previously filed motion re Subpoena Duces Tecum served on Los Angeles Harbor Department and considered without oral argument.

### BACKGROUND

This case is an admiralty action for damages and declaratory relief by owners and/or insurers of United States-bound cargo carried on the vessel M/V BREMEN SENATOR (hereafter "the vessel"), which, on May 15, 1991, suffered a casualty, against the owners, managing owner, charterer, and subcharterer of the vessel. On May 15, 1991, the vessel was in an allision with a sea berth, and subsequent stranding, near Osaka, Japan. Thereafter, defendants declared "general average," seeking to spread their loss to all parties in the maritime venture, and attributed plaintiffs' contribution at $560,-000.00. Plaintiffs seek, *inter alia,* damages and a declaration that defendants are not entitled to recover a "general average" contribution from them.

Stoller was designated as plaintiffs' expert witness on September 6, 1994. Plaintiffs have represented that Stoller will testify "as to proper underway bridge procedures and conduct; proper bridge procedures and conduct when in restrictive waters; proper master, officer, crew and pilot interaction; proper vessel stowage with regard to obstructed view requirements; proper navigational procedures; the rules of the road; proper planning for transiting restricted waters; proper manning procedures; proper use of bridge equipment; essential vessel maneuvering characteristics which master, officers and crew should know; management techniques to ensure familiarity with vessel systems; management techniques to ensure the master [sic] officers and crew are familiar with their duties; management techniques to ensure the vessel makes a safe arrival at a designated port; management techniques to ensure the master, officers and crew are properly trained; an opinion on the casualty on the M/V BREMEN SENATOR during the voyage in question; an opinion on the causes of the casualty of the M/V BREMEN SENATOR; an opinion as to the seaworthiness of the M/V BREMEN SENATOR for the voyage in question; and an opinion as to whether the M/V BREMEN SENATOR was properly prepared for the voyage which resulted in the casualty." In his curriculum vitae, which plaintiffs disclosed to defendants, Stoller lists his experiences as a Los Angeles Harbor pilot (1988–1992) and as an employee of Exxon's, as third mate (1975–77), second mate (1977–79), chief mate (1979–84), and master (1984–1988). Sometime after the Exxon Valdez disaster, Exxon shipping reorganized as Sea River Maritime, Inc.

On or about June 12, 1995, defendants served a subpoena duces tecum on the custodian of records for Sea River Maritime, Inc., in the Southern District of Texas, seeking production of "[a]ny and all records ... concerning or relating to ... Stoller, including, but not limited to, his personal [sic] file, documents reflecting his license and activities

as master, and documents relating or referring to any reprimands or disciplinary proceedings against him."

Defendants opine that Stoller is plaintiffs' key witness, and that he will testify that the vessel was unseaworthy at the time of the casualty or defendants failed to exercise due diligence to make her seaworthy and that the accident was caused by the negligence of the vessel's master and/or pilot. They argue that information regarding Stoller in the personnel files of previous employers is relevant to his qualifications as an expert.

Stoller argues that the requested documents are protected by his right to privacy under California and federal law. He also claims that the information may be obtained by other means, such as deposing his former supervisors at Exxon and obtaining documents from the United States Coast Guard through the Freedom of Information Act. Stoller requests the Court examine the documents *in camera* and issue a protective order limiting disclosure of the documents to only plaintiffs' and defendants' attorneys and expert witnesses, but not the parties themselves, and providing that either party could modify the order upon a showing of good cause if changed circumstances compel the party to disclose the documents to some other person, and sealing the documents following trial.

## DISCUSSION

Federal Rules of Civil Procedure 26(b)(1) provides for discovery in civil actions, as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial

> if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

"Information is regarded as 'relevant to the subject matter' if it might reasonably assist a party in *evaluating* the case, *preparing* for trial, or facilitating *settlement* thereof.... [I]nformation sought may relate to ... the *credibility* of a witness or other evidence in the case." Schwarzer, Tashima & Wagstaff, *California Practice Guide: Federal Civil Procedure Before Trial,* § 11:21 (1993 revised). (emphasis in original)

■ Federal Rule Civil Procedure 45 governs deposition subpoenas duces tecum for the production of documents with or without the taking of a deposition. Objections to a deposition subpoena duces tecum shall be served within 14 days after service or before the time for compliance, if less than 14 days. Rule 45(c)(2)(B). Rule 45(d)(2) requires all claims of "privilege" or "protection as trial preparation materials" be made expressly and be supported by a description of the nature of the documents or communications not produced that is sufficient to enable the demanding party to contest the claim. Failure to comply with Rule 45(d)(2) risks the finding that the privilege has been waived.[1]

■ Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute. Toward this end, Rule 26(b) "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). As commented upon by one court:

> "A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of this action. Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possi-

---

1. Stoller has not complied with Rule 45(d)(2) and has not prepared a privilege log, but defendants do not raise this as a ground to deny his motion to quash.

ble bearing upon the subject matter of this action."

*Jones v. Commander, Kansas Army Ammunitions Plant,* 147 F.R.D. 248, 250 (D.Kan. 1993). Rule 26(b) excludes privileged matters from discovery; but even privileged matters are subject to disclosure in certain circumstances. *See* Fed.R.Civ.P. 26(c) and 45(c)(2)(B). Indeed, privileges are strongly disfavored in federal practice. *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

■ Stoller claims that the documents are protected by his right to privacy as a California resident. Although the right to privacy is not a recognized privilege, many courts have considered it as such in discovery disputes. Schwarzer, Tashima & Wagstaff, *California Practice Guide: Federal Civil Procedure Before Trial,* § 11:76 (1993 revised). The right to privacy is set forth in Article I, Section 1 of the California Constitution. It is not an absolute right but a right subject to invasion depending upon the circumstances:

> [A] 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms.... ['The protection afforded to the plaintiff's interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens.'].... [W]hen determining the existence (or not) of a constitutionally protected claim we must weigh the severity of each potential invasion of privacy.

*Heller v. Norcal Mutual Ins. Co.,* 8 Cal.4th 30, 43–44, 32 Cal.Rptr.2d 200, 876 P.2d 999 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 602 (1994). (citations omitted)

■ An admiralty claim is brought under federal question jurisdiction. "[I]n federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege." *Kerr v. U.S. District Court for the Northern District of California,* 511 F.2d 192, 197 (9th Cir.1975), *aff'd on procedural grounds,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); *Hampton v. City of San Diego,* 147 F.R.D. 227, 229

(S.D.Cal.1993). *Accord United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); *William T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 104 (3rd Cir.1982). "Initially, I must consider the threshold question of whether the California constitutional provision [regarding privacy] has applicability in a federal court action where subject matter jurisdiction is premised on a federal question. To the extent that [the California Constitution] creates a state privilege against disclosure, it would not be entitled to legal recognition in a federal question case pending in federal court. However, if state doctrine promoting confidentiality does not conflict with federal interest, it may be taken into account as a matter of comity. For purposes of the present Motion, we may assume that the protection afforded by [the California Constitution] should be addressed in determining the discoverability of the subject documents." *Gottlieb v. Wiles,* 143 F.R.D. 235, 237 (D.Col.1992). (citations omitted)

■ Stoller is plaintiffs' expert witness. By becoming an expert witness, Stoller has placed in issue his qualifications and credibility. To some extent, an expert's qualifications stem from his work experiences and history. The requested documents relate to Stoller's past employment history and experiences with Exxon. Some of the documents relate to subordinate employment positions in 1975–1984 as third mate, second mate and chief mate; others relate to Stoller's employment as master. Although Stoller has not cited any case law **prohibiting** the discovery of information from an expert witness' personnel file maintained by a previous employer on the ground it is privileged or protected by the right to privacy, some of the documents are not relevant and are traditionally private. Only those documents relating to Stoller's employment as master are relevant to his qualifications and credibility as an expert. Moreover, the documents in Stoller's personnel file regarding employment as master may pertain to family, health or financial matters, areas generally considered to be private or confidential. Thus, only the following documents are discoverable: documents concerning or relating to Stoller's em-

ployment and activities as master, including reprimands or disciplinary proceedings, with the exception of family, health and financial documents, including rate of pay.

Even if all documents in Stoller's personnel files are protected by his privacy right, that right may, nevertheless, be invaded for litigation purposes. The court, in *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D.Cal.1990), commented on the appropriateness of balancing the right to privacy with litigation goals:

> While this court is of the view that such a balancing is appropriate, this court is also mindful of the fact that, by its very nature, litigation has a tendency to make public the sort of information that individuals otherwise would prefer to keep private. Public disclosure, in the end, is not only natural and generally unavoidable but also necessary and healthy to a process so dependant on accuracy and truth. Nonetheless, the initiation of a law suit, does not, by itself, grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose. A balance must be struck.

The court also noted that even when a balance is struck, the " 'scope of disclosure will be narrowly circumscribed; such an invasion of the right to privacy must be drawn with narrow specificity and is permitted only to the extent necessary for a fair resolution of the lawsuit.' " *Id.*, at 552, (citing with approval *Moskowitz v. Superior Court*, 137 Cal. App.3d 313, 316, 187 Cal.Rptr. 4 (1982)).

In recent years, the courts have routinely ordered the production of personnel files of third parties in employment discrimination and police brutality cases. *See Jones v. Commander*, 147 F.R.D. 248 (1993) (the court ordered production of evaluation reports of a non-party supervisor both during and outside the period that the plaintiff was supervised); *E.E.O.C. v. University of New Mexico*, 504 F.2d 1296 (10th Cir.1974) (personnel files for all faculty members were deemed discoverable in a failure to promote case); *Orbovich v. Macalester College*, 119 F.R.D. 411 (D.Minn.1988) (tenure and personnel files of third parties were ordered to be produced in a denial of tenure case);

*United States v. Westinghouse Elec. Corp.*, 638 F.2d 570 (3rd Cir.1980) (medical information contained within non-party employees' personnel files was discoverable in an action brought under OSHA); and *Weahkee v. Norton*, 621 F.2d 1080 (10th Cir.1980), (non-party employees' files were discoverable in a discrimination case). The importance of the information to the defense outweighs Stoller's privacy interest; **provided** the request is narrowed to those documents relating to Stoller's employment as master (1984–1988), including reprimands or disciplinary proceedings, with the exception of family, health and financial documents. This narrowing achieves a balance between defendants' need to discover the information and Stoller's privacy right.

■ In his motion for a protective order, and supporting declarations, Stoller does not set forth any facts explaining or supporting his request that the parties not have access to the documents. Without supporting facts, there are no grounds to grant Stoller's motion for a protective order.

■ Lastly, if a motion to quash is opposed and the moving party loses, the opposing party may seek attorney's fees and expenses unless the court is convinced that the losing party was "substantially justified" or "other circumstances" exist making such an award "unjust." *See In re Akros Installations, Inc.*, 834 F.2d 1526 (9th Cir.1987); *Rockwell Int'l, Inc. v. Pos–A–Traction Indus.*, 712 F.2d 1324 (9th Cir.1983). Defendants have not filed a motion for sanctions, and this issue is not now before the Court.

### ORDER

1. Stoller's Motion to Quash the Subpoena Duces Tecum served on the Custodian of Records for Sea River Maritime, Inc., is DENIED IN PART AND GRANTED IN PART.

2. The Custodian of Records for Sea River Maritime, Inc. shall appear on July 21, 1995, at the time and place set forth in the Notice of Taking Deposition served on or about June 12, 1995, and shall produce all records relating to the employment of Captain Mitchell Scott Stoller as master, during

the period 1984–1988, including reprimands or disciplinary proceedings against him, with the exception of family, health and financial documents, including rate of pay.

3. Stoller's Motion for a Protective Order is DENIED.