814 F.2d 560
 PUBLIC UTILITIES COMMISSION OF the STATE OF CALIFORNIA;
California Energy Resources Conservation and Development
Commission; Southern California Edison Company; Pacific
Gas and Electric Company; San Diego Gas & Electric Company;
Department of Water and Power of the City of Los Angeles, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Bonneville Power
Administration, Respondent,
and
Aluminum Company of America; Columbia Falls Aluminum
Company; Commonwealth Aluminum Corporation; Georgia
Pacific Corporation; Intalco Aluminum Corporation; Kaiser
Aluminum & Chemical Corporation; Pacific Carbide & Alloys
Company; Pennwalt Corporation; Reynolds Metals Co.;
Oregon Metallurgical Corporation; Association of Public
Agency Customers, Intervenors.
 No. 86-7280.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 9, 1986.
Decided April 1, 1987.
 
 John D. McGrane, William M. Dudley, Richard M. Merriman, Washington, D.C., for petitioners.
 John Estes and A. Karen Hill, Washington, D.C., John A. Cameron, Jr., Portland, Or., David J. Adler, Heidi L. Sachs, Matthew Cohen, Kelley D. McCoy, Seattle, Wash., Paul J. Kaufman, Portland, Or., for intervenors.
 Petition for Review of a Nonfinal Rate Proposal of the Bonneville Power Administration.
 Before GOODWIN, KENNEDY and PREGERSON, Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 The California Public Utilities Commission, California Energy Resources Conservation and Development Commission, Los Angeles Department of Water and Power, and three California electric utility companies, the petitioners here, seek review of changes proposed by the Bonneville Power Administration for its Nonfirm Energy Rate Schedules. Petitioners contend that BPA failed to hold a hearing required by the Northwest Electric Power Planning and Conservation Act (the Regional Act), 16 U.S.C. Secs. 839e(i) and (k) (1982), prior to adopting the new rates. Petitioners urge us to reverse summarily the interim approval of the rates by the Federal Energy Regulatory Commission (FERC).
 
 
 2
 Petitioners contend that the BPA's failure to hold the required hearing is a final order and, as such, is reviewable in our court prior to final confirmation and approval of the new rate schedule by FERC. Alternatively, petitioners contend we should grant a writ of mandamus ordering BPA to cease implementation of the rate schedule until the required hearing has been held. We dismiss the review petition for lack of jurisdiction and decline to issue a writ of mandate.
 
 
 3
 Petitioners purchase nonfirm electric power from BPA. Nonfirm hydroelectric energy is produced by Columbia River flows in excess of the lowest flows on record. Thus, firm power is generated by that portion of the flow of the Columbia corresponding to the driest year on record. BPA charges different rates for firm and nonfirm electricity.
 
 
 4
 In 1985, following an evidentiary hearing, BPA issued a Nonfirm Energy Rate Schedule. In March 1986, in response to the decline in oil and natural gas prices, BPA's Administrator issued proposed changes in the rate schedule that would reduce nonfirm energy rates, a schedule we refer to here as the 1986 schedule. Petitioners filed exceptions to the 1986 schedule and requested that BPA hold a hearing. Petitioners apparently believed that BPA should have reduced its nonfirm rates even further. BPA adopted the 1986 schedule, without a hearing, and submitted the schedule to FERC. FERC's grant of interim approval in May 1986 allowed BPA to put the 1986 schedule into effect. FERC has not yet ruled on final confirmation and approval of the 1986 rate schedule.
 
 
 5
 Petitioners urge us to strike down BPA's interim rate, contained in the 1986 schedule, on the ground that BPA failed to hold a hearing required by sections 7(i) and 7(k) of the Regional Act, 16 U.S.C. Secs. 839e(i) and (k), prior to the rate's adoption. We must first decide, however, whether we have jurisdiction to consider the petition.
 
 
 6
 The Regional Act grants us jurisdiction to review only final actions, and absent that predicate we must dismiss a petition for review, 16 U.S.C. Secs. 839f(e)(1) and 839f(e)(5), and a BPA rate determination is not deemed to be a final action until it has received confirmation by FERC. 16 U.S.C. Sec. 839f(e)(4)(D).
 
 
 7
 Here, FERC has not given final confirmation and approval to BPA's Nonfirm Energy Rate Schedule. We have made it clear that a challenge to a BPA rate determination will not be entertained by this court, even when it is alleged that BPA followed unconstitutional ratemaking procedures, until FERC has passed final judgment on the rate. See Oregon Pub. Util. Comm'r v. Bonneville Power Admin., 767 F.2d 622, 625-28 (9th Cir.1985); see also California Energy Comm'n v. Johnson, 767 F.2d 631, 633-34 (9th Cir.1985) (challenge to a BPA rate order on the ground that BPA failed to follow its ratemaking procedures must await final FERC approval); see also City of Seattle v. Johnson, 813 F.2d 1364 (9th Cir.1987). Our reluctance to review BPA rate orders, including the procedures followed in their promulgation, until after FERC confirmation is based on the doctrines of ripeness and exhaustion, as well as the clear language of the Regional Act. See Oregon Pub. Util. Comm'r, 767 F.2d at 629. "Refusing intervention in current agency proceedings ensures against premature, possibly unnecessary, and piecemeal judicial review." Id.
 
 
 8
 Petitioners attempt to distinguish Oregon Pub. Util. Comm'r and California Energy Comm'n by arguing that this petition does not challenge BPA's interim rates in the 1986 schedule. Rather, petitioners contend that they challenge only BPA's failure to hold a hearing before adopting those rates. Petitioners argue that the failure to hold a hearing is itself a final action that can be reviewed independently of the rate order. We are unable to accept this proposition.
 
 
 9
 As stated in Oregon Pub. Util. Comm'r and California Energy Comm'n the proper time for seeking judicial review of procedures followed or neglected by BPA in promulgating rates is when the rates themselves may be reviewed by this court. This is so because the issues presented by procedural challenges and challenges to the rates themselves are often closely related. Indeed, we would be engaging in piecemeal review if we heard the procedural challenge now and reviewed the rate order at a later date. If FERC were to deny confirmation of the rate order, our review of BPA's ratemaking procedures would be rendered unnecessary.
 
 
 10
 Until FERC has confirmed the interim rates, we lack jurisdiction under the Regional Act to review petitioners' contention that BPA's failure to hold a hearing renders the rates invalid.
 
 
 11
 Petitioners contend that BPA's failure to hold a hearing before adopting the interim rates in the 1986 schedule is grounds for mandamus relief. They argue that they have an "interlocutory statutory right" to a hearing, a right that will be irrevocably lost if the court does not immediately review the procedures followed by BPA.
 
 
 12
 Mandamus is a drastic remedy that will be invoked only in extraordinary situations. Kerr v. United States Dist. Court, 426 U.S. 394, 402, 96 S.Ct. 2119, 2133, 48 L.Ed.2d 725 (1976). Our use of the writ in administrative cases is even more rare. Oregon Pub. Util. Comm'r, 767 F.2d at 630. "The circumstances that will justify our interference with nonfinal agency action must be truly extraordinary, for this court's supervisory province as to agencies is not as direct as our supervisory authority over trial courts." Id. In determining whether to grant a writ of mandamus, we must decide whether the petitioner will be damaged or prejudiced in a way not correctable on appeal if the writ is denied. Bauman v. United States Dist. Court, 557 F.2d 650, 654-55 (9th Cir.1977).
 
 
 13
 We do not agree with petitioners that BPA's alleged failure to hold a hearing before issuing its interim rates presents a truly extraordinary situation that warrants mandamus relief. Although FERC will not review BPA's procedures, petitioners have failed to convince us that there is a possibility of harm not correctable when we review the final rate order. Upon FERC confirmation of the rates, the petitioners may seek review of both the rates and BPA's procedures. At that time, "the entire ... proceeding is subject to vacation if necessary, and the court can order refunds for any overcollections by BPA...." Oregon Pub. Util. Comm'r, 767 F.2d at 630.
 
 
 14
 Thus, if the court determines, upon review of the final rate order, that a procedural irregularity has occurred, the matter can be remanded to BPA with instructions to follow whatever procedural requirements may have been ignored. For example, if, as the petitioners contend, the failure to hold a hearing resulted in an inadequate record for review, the case may be returned to the agency for further development of the record, and for a hearing if one should have been held. See id. at 629. Meanwhile, the petitioners are fully protected, should adoption of the interim rates have been improper, by this court's power to provide retroactive refunds if necessary. See id. at 630.
 
 
 15
 In summary, petitioners have an adequate means of challenging BPA's ratemaking procedures during review following FERC's confirmation of the rates. Petitioners will suffer no irreparable harm by awaiting review of the final rate order to raise their procedural objections. In light of these factors and the strong policy against review of nonfinal agency actions, we decline to grant a writ of mandamus.
 
 
 16
 The petition is DISMISSED.