### In the Matter of RHONE–POULENC RORER PHARMACEUTICALS, INC., et al., Petitioners.

#### No. 97–3535.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 13, 1998.

Decided March 11, 1998.

Susan Weber (submitted), Sara J. Gourley, Sidley & Austin, Chicago, IL, for Rhone–Poulenc Rorer Pharmaceuticals and Armour Pharmaceutical.

Duncan Barr, O'Connor, Cohn, Dillon & Barr, San Francisco, CA, Geoffrey R.W. Smith, Washington, DC, for Bayer Corp.

Richard L. Berkman, Joseph A. O'Connor, Fred T. Magaziner, Dechert, Price & Rhoads, Philadelphia, PA, for Baxter Healthcare Corp.

David I. Bell, Knapp, Peterson & Clarke, Glendale, CA, for Alpha Therapeutic Corp.

David S. Shrager, Shrager, McDaid, Loftus, Flum & Spivey, Philadelphia, PA, for MDL 986 Plaintiffs.

Before POSNER, Chief Judge, and BAUER and ROVNER, Circuit Judges.

POSNER, Chief Judge.

The defendants in the multidistrict litigation over HIV-contaminated blood solids (see *In re Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293 (7th Cir.1995)) ask us to issue a writ of mandamus to Judge Grady ordering him to rescind a series of orders in which he has commanded the defendants to designate no more than 24 "common-issue expert witnesses" as possible trial witnesses and has forbidden the defendants to call any other common-issue expert witnesses to testify at trial "unless the trial judge, in his or her discretion, permits it for good cause shown."

By way of background (more fully elaborated in our previous opinion), it appears that several thousand hemophiliacs were infected during the early 1980s with the AIDS virus as a result of the contamination of blood solids manufactured by the defendant drug companies from purchased or donated blood some of which contained the virus. Suits by these hemophiliacs or their estates have been filed in state and federal courts all over the country. The federal suits were consolidated for pretrial proceedings in the federal district court in Chicago, pursuant to 28 U.S.C. § 1407, and assigned to Judge Grady. When these proceedings are completed (or possibly somewhat earlier), each of the cases that has been consolidated will be returned for trial to the court that transferred it to Judge Grady's court. Cf. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* —— U.S. ——, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). At present it is estimated that 140 suits will be retransferred in this fashion. (A number of other suits have been settled.) Although there are individual differences of law and fact among the suits, there are also common issues, such as the care with which the defendants manufactured the blood solids that turned out to be contaminated. Expert testimony will be required to illuminate some of these common issues. The parties are, of course, entitled to depose experts designated by opposing parties as potential witnesses. The defendants wish to designate a total of 137 witnesses. The plaintiffs and Judge Grady think that this is too many—that the defendants will not put on anywhere near 137 different expert witnesses even if there are 140 or more trials, though in fact most of those cases can be expected to settle before trial, and that it would protract the proceedings unduly for the plaintiffs to have to depose so many potential expert witnesses. The defendants acknowledge that they won't put on 137 different common-issue expert witnesses at the various trials, but they ar-

gue that because the cases have different facts (notwithstanding the common issues on which these experts will be testifying) and venues, they need a large array of experts out of which to pick specific ones for particular cases. The judge disagreed, and limited the defendants to 24 common-issue expert witnesses. He ordered that no other common-issue experts may testify at the trials without leave of the trial judge because only the 24 who will be eligible to testify will be deposed.

 The defendants argue that the judge exceeded his powers both by limiting the number of common-issue experts as tightly as he did and by attempting to regulate the course of the trials that will ensue when his role in the litigation ends. We need not decide whether these are good arguments. Mandamus as a mode of correcting rulings by a trial judge is an available remedy only if the judge committed an error so egregious that it can fairly be described as usurpative and the party complaining of the error will suffer irreparable harm if it is not corrected. E.g., *Kerr v. U.S. District Court*, 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976); *In re Rhone–Poulenc Rorer, Inc., supra*, 51 F.3d at 1295. Neither condition is satisfied here. A judge presiding over pretrial proceedings has the power to limit the number of witnesses, and Judge Grady's action in limiting the number of the defendants' common-expert witnesses, which he explained in a lengthy opinion, is not so unreasonable in the circumstances that it can be considered usurpative. And, as he pointed out, it is inevitable that pretrial proceedings will affect the conduct of the trial itself, a notable example being a final pretrial order issued under Fed.R.Civ.P. 16—an order that a judge presiding over pretrial proceedings by reference from the Multidistrict Litigation Panel has (or so all the cases we've found on the question hold or assume) the power to issue. E.g., *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1011–12 (1st Cir.1988); *Mills v. United States*, 764 F.2d 373, 375–76 (5th Cir.1985); *Lima v. United States*, 708 F.2d 502, 503 (10th Cir. 1983); *In re FMC Corporation Patent Litigation*, 422 F.Supp. 1163, 1165 (Judic. Panel on Multidist. Litig.1976); *In re Air Crash Disaster*, 720 F.Supp. 1505, 1520–21 (D.Colo. 1989), rev'd on other grounds, 964 F.2d 1059 (10th Cir.1992); see also *In re Air Crash Disaster*, 86 F.3d 498, 516–18 (6th Cir.1996). The order challenged here is of that character.

And the harm to the defendants is not irreparable. They can ask the judges to whom the cases will be retransferred for trial to disregard Judge Grady's order. Should a judge decide not to disregard it, and should the defendants go on to lose that case, they can appeal and challenge the order, just as they can challenge any other interlocutory ruling that they think constituted reversible error. The order in question does not exert the sort of irresistible pressure to settle on disadvantageous terms that persuaded a majority of this panel, the last time the defendants asked for mandamus, that a writ of mandamus was appropriate (in that instance to decertify the plaintiff class). *In re Rhone–Poulenc Rorer, Inc., supra.*

The petition is therefore DENIED.