**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANDREW BARTON; KENNETH
BORENSTEIN; GERRI MARIN; TRISHIA
MEDEMA; and JAMES MEYTHALER,
                    *Petitioners,*

            v.

UNITED STATES DISTRICT
COURT FOR THE CENTRAL
DISTRICT OF CALIFORNIA,
                    *Respondent,*

SMITHKLINE BEECHAM
CORPORATION, dba
GlaxoSmithKline, A Pennsylvania
Corporation,
            *Real Party in Interest.*

No. 05-71086

D.C. No.
CV-01-07937-MRP

OPINION AND
ORDER

Petition for Writ of Mandamus to the
United States District Court for the
Central District of California
Mariana R. Pfaelzer, District Judge, Presiding

Argued and Submitted
May 12, 2005—San Francisco, California

Filed June 9, 2005

Before: Andrew J. Kleinfeld, Michael Daly Hawkins, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Kleinfeld

**COUNSEL**

Robert M. Brava-Partain and Karen Barth Menzies, Baum Hedlund, A Professional Corp., Los Angeles, California, for the petitioners.

James D. Miller, King & Spaulding LLP, Washington, D.C., and Vernon I. Zvoleff, Drinker Biddle & Reath LLP, San Francisco, California, for the real party in interest.

**OPINION**

KLEINFELD, Circuit Judge:

We grant a writ of mandamus to prevent disclosure of communications by prospective clients to their lawyers.

#### Facts.

Plaintiffs sued SmithKline Beecham Corporation, which does business as GlaxoSmithKline. They claim injury from Paxil, a medication manufactured by SmithKline. Plaintiffs did not initiate contact with their lawyers by walking into the law office. Instead, the law firm posted a questionnaire on the internet, seeking information about potential class members

for a class action the law firm contemplated.[1] The district court ordered plaintiffs to produce the four plaintiffs' answers to the questionnaire.[2] Plaintiffs seek, and we grant, a writ of mandamus vacating the district court's order compelling production.[3]

The law firm that now represents the plaintiffs posted a questionnaire relating to the antidepressant Paxil on the internet. Although the firm in its briefs calls the questionnaire an "intake" questionnaire, it did not call it that on the net. The law firm's presentation on the web does not say that those who answer the questionnaire are submitting themselves to the firm as potential clients.

The questionnaire is entitled "PAXIL WITHDRAWAL LITIGATION INITIAL CONTACT." Its introduction, in boldface, says that its purpose is "to gather information." The subject of the information is "potential class members," but responses are requested, not only from potential class members, but also from "loved ones" who would presumably include siblings, parents of adult children, and others who knew of another person's Paxil use, but who could not be plaintiffs in a lawsuit for damages from Paxil.[4]

---

[1]The district court did not certify a class. A large number of Paxil cases have been consolidated by the Judicial Panel on Multidistrict Litigation, with five plaintiffs, including the four who returned questionnaires, to go to trial first.

[2]A motion to stay the order pending the petition for a writ of mandamus was filed March 1, 2005, and granted by a motions panel of this court March 23, 2005, and the matter was placed on a May calendar for argument.

[3]There are five plaintiffs, but only four submitted answers to the firm's internet questionnaire. Thousands of other answers to the questionnaire were submitted to the law firm, but the order being reviewed and the petition do not address the other questionnaires. The district court order says "this Court GRANTS GSK's motion to compel web site questionnaires completed by the four trial plaintiffs."

[4]The boldface text states, in full:

The questionnaire asks for extensive information about use of Paxil and symptoms. At the end, it suggests that "you do not sign nor return" a form that GlaxoSmithKline might send requesting an authorization for release of medical records. Then, in order to cause the filled-out questionnaire to be e-mailed to the law firm, the person filling it out has to check a "yes" box. The "yes" box acknowledges that the questionnaire "does not constitute a request for legal advice and that I am not forming an attorney client relationship by submitting this information."[5]

The law firm, as it has acknowledged, was careful to avoid committing itself to an attorney-client relationship. It might (and did) receive many thousands of responses, and did not

---

**The purpose of this questionnaire is to gather information about potential class members who have suffered withdrawal symptoms as a result of stopping the use of Paxil or decreasing the dose of Paxil in an effort to stop taking it. We will also use your contact information to keep you updated on developments of the litigation including whether a class is certified, either formally or for settlement purposes.**

**If you believe that you or a loved one has been adversely affected by GlaxoSmithKline, the makers of Paxil (generically known as *Paroxetine*), please fill out the form below:**

[5]The "yes" box acknowledgment states, in full:

I agree that the above does not constitute a request for legal advice and that I am not forming an attorney client relationship by submitting this information. I understand that I may only retain an attorney by entering into a fee agreement, and that I am not hereby entering into a fee agreement. I agree that any information that I will receive in response to the above questionnaire is general information and I will not be charged for a response to this submission. I further understand that the law for each state may vary, and therefore, I will not rely upon this information as legal advice. Since this matter may require advice regarding my home state, I agree that local counsel may be contacted for referral of this matter.

want to leave itself open to suits for malpractice to those who answered, such as for letting the statutes of limitations run.

More important than what the law firm intended is what the clients thought. Here, there is ambiguity. On the one hand, the form can be filled out by "a loved one" rather than by the potential client, and the person sending it in has to acknowledge that he is not requesting legal advice and is not forming an attorney client relationship by sending it in. The form also states that the person will not have retained an attorney until he signs a fee agreement and that "local counsel may be contacted for referral of this matter." The form states that its purpose is to "gather information about potential class members," not to consider accepting them as clients. On the other hand, the stated purpose of gathering "information about potential class members" suggests that the firm is indeed trolling for clients.

The manufacturer sought the four plaintiffs' questionnaires in discovery "to juxtapose against what they are now claiming in discovery to determine whether or not the two fit and whether there's any information that provides for fertile cross-examination at trial." The plaintiffs opposed production on the basis of the attorney-client privilege. No privilege relating to confidential medical disclosures is asserted, no doubt because the nature of the claims, damages from Paxil withdrawal, would make the medical information disclosed in the questionnaires discoverable, if the same questions were put fully to plaintiffs in interrogatories or depositions.

The district court concluded that the attorney-client privilege did not apply because the disclaimer established that the communications were not "confidential" and that checking the "yes" box waived the privilege. The district court acknowledged that under California law[6] the privilege applied

---

[6]It is undisputed that California law controls whether the questionnaires are privileged, under the following sentence in Federal Rule of Evidence 501:

to pre-employment communications with an attorney by a prospective client with a view to employing the attorney. Although the district court did not label any part of its decision "findings of fact," its decision states that the law firm posted the questionnaire online to find potential clients, that the four individuals submitted answers "because they were seeking legal representation," and that as a result of submitting the questionnaires they obtained representation by the law firm.

What tipped the district court in favor of disclosure was the checked "yes box" disclaimer that included "I agree that the above does not constitute a request for legal advice and that I am not forming an attorney client relationship by submitting this information." The district court concluded that the plaintiffs' attorneys could not assert the attorney-client privilege against the defendants when they insisted on "a disclaimer of confidentiality" to protect themselves.

Analysis.

Plaintiffs seek a writ of mandamus because once the information is out of the bag, you can't stuff it back in. Defendant opposes the writ, arguing that the disclaimers on the questionnaire establish that by submitting answers, the plaintiffs were not seeking legal advice, and were not assured that their answers would be confidential.

**[1]** Mandamus is a " 'drastic' " remedy limited to " 'extraordinary situations.' "[7] The writ may be denied even where,

---

However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

[7]*Spencer v. United States Dist. Court*, 393 F.3d 867, 869 (9th Cir. 2004) (quoting *Kerr v. United States Dist. Court*, 426 U.S. 394, 402 (1976)).

on an appeal or petition for review, we would conclude that the petitioner was correct. We apply the "*Bauman* factors" in exercising our discretion whether to grant the writ:[8]

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.[9]

Like all multi-factor tests, this one gives an appearance of more precision than it really has, but it nevertheless furnishes useful guidance.

[2] The first and second factors are satisfied, because once the questionnaires are disclosed to the defendant, the disclosure cannot be undone, by appeal or otherwise. But that does not distinguish this case from the myriad discovery disputes for which we do not grant interlocutory relief. There is nothing to support the fourth factor, "oft-repeated error," or "persistent disregard" of the rules.

[3] The third and fifth factors are determinative in this case, particularly the fifth. As required by the fifth factor, the problem is "new and important." Part of the importance is that, although only four questionnaires are before us, thousands more are waiting in the wings because this is a consolidated multidistrict litigation with thousands of plaintiffs. Of even greater salience is the fundamental importance of the

---

[8]*Bauman v. United States Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977).

[9]*Spencer*, 393 F.3d at 869 (citing *Bauman*, 557 F.2d at 654-55).

attorney-client privilege to our adversarial system of justice. What is "new" about the case is attorneys trolling for clients on the internet and obtaining there the kind of detailed information from large numbers of people that used to be provided only when a potential client physically came into a lawyer's office. Two things had to happen to bring this about: the change in law in the 1970s that permitted attorney advertising,[10] and the sufficiently widespread use of the internet, within the past five or ten years, that makes internet advertising worthwhile.

Of course, these reasons for granting the writ justify it only if the "district court's order is clearly erroneous as a matter of law."[11] We conclude that it is.

The first determination the district court made was whether, absent consideration of the disclaimer, the questionnaires were submitted "in the course of" an attorney-client relationship[12] and thus ordinarily protected under California's attorney-client privilege. Concluding that they were, the district court next considered whether the disclaimer at the bottom of the questionnaire acted as a waiver of the protections afforded under the attorney-client privilege. This second step is where the district court clearly erred.

In considering the first step, the district court said that "[t]he four individuals who filled out the questionnaires, in turn, did so only because they were seeking legal representation with regard to the same matter. Indeed, by filling out the questionnaire, these four plaintiffs did, in fact, secure legal representation." Under Federal Rule of Civil Procedure 52(a), findings of fact "are unnecessary on decisions of motions." Thus, no findings of fact were necessary to decide Glaxo-SmithKline's motion to compel discovery. It is not clear

---

[10]*See Bates v. State Bar of Ariz.*, 433 U.S. 350 (1977).

[11]*Spencer*, 393 F.3d at 869 (citing *Bauman*, 557 F.2d at 654-55).

[12]Cal. Evid. Code § 952.

whether the district court intended the quoted sentence to be a finding of fact. If it did, then we would review it for clear error under *Valley Engineers Inc. v. Electric Engineering Co.*[13] If it did not, we would come to the same conclusion ourselves.

That is not to say that the question whether the respondents were trying to secure legal services is without doubt. Arguing that they were is (1) the response of at least one of them that he was trying "to get in the class action," (2) the nature of the information they provided (detailed accounts of their psychological and physical symptoms and medical histories relating to Paxil), (3) the context of supplying information to lawyers who apparently were bringing a Paxil class action, and (4) the ultimate representation of these four plaintiffs. Arguing that they were not was (1) the elusive wording of the questionnaire, (2) the disclaimers, (3) the response of at least one of them that she was furnishing information and "if they needed me, call me," and (4) the law firm's statement that the lawyers were attempting to "gather information *about* potential class members,"[14] not that they were soliciting them as clients. The questionnaire is ambiguous, but the plaintiffs should not be penalized for the law firm's ambiguity. It is their privilege, not any right of the lawyers, that is at stake. A layman seeing the law firm's internet material would likely think he was being solicited as a potential client. In all likelihood, a very high proportion of questionnaire submitters completed the questionnaire "with a view to retention of" the law firm,[15] and thus submitted them "in the course of" an attorney-client relationship.[16]

---

[13]*Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1052 (9th Cir. 1998).

[14](Emphasis added).

[15]*See Beery v. State Bar of Cal.*, 739 P.2d 1289, 1293 (Cal. 1987).

[16]Cal. Evid. Code § 952.

Given this determination, a statement on the questionnaire that it is intended to be "confidential" is not required to protect the questionnaire from disclosure. Under California law, once it is determined that a communication was made in "the course of the lawyer-client" relationship, "the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential."[17]

**[4]** The opponent of the privilege in this case is GlaxoSmithKline, and it thus has the burden of showing that the answers to the questionnaires were not intended to be confidential. The district court found that GlaxoSmithKline had met this burden because of the disclaimer at the bottom of the questionnaire which disclaimed any formation of an attorney-client relationship. The district court clearly erred in treating the disclaimer of an attorney-client relationship as a disclaimer of confidentiality.

**[5]** First, the district court based its conclusion on a misunderstanding that the law firm had made "a disclaimer of confidentiality." It did not. Neither the word "confidentiality" nor the substance of a disclaimer of confidentiality can be found in the online questionnaire. The text in the checked box to which the court referred is potentially confusing to clients (as their ambiguous responses suggest) and the law firm should have spoken clearly to the laymen to whom its website was addressed about what commitments it did and did not make. A risky and expensive trip to this court could have been avoided by a plain English explanation on the website. But the vagueness and ambiguity of the law firm's prose does not amount to a waiver of confidentiality by the client. Our focus is on the clients' right, not the lawyers.' And the words just do not say what the district court thought they said, that "confidentiality" was waived.

---

[17]Cal. Evid. Code § 917.

**[6]** Second, the law in California requires that the attorney-client privilege apply, even though the plaintiffs filled out the questionnaires before the law firm represented them and with no assurance that it would. Under California law, a client's communication to a lawyer is confidential if made "in the course of that relationship,"[18] which by itself might seem to imply that communications prior to establishment of the relationship would not be privileged. But the phrase does not mean that the lawyer has to take the person on as a client before the privilege applies, because the word "client" is defined to mean a person who consults a lawyer for the purposes of "retaining the lawyer," "securing legal service," or securing "advice."[19] All three can precede the lawyer's acceptance of the client.

**[7]** The check box on the law firm's website protected the law firm by requiring the questionnaire submitter to disclaim a purpose of "request[ing] legal advice," and to acknowledge that the submitter is not "forming an attorney client relationship" by sending in the answers. But the box does not disclaim the purpose of "securing legal service." The questionnaire is designed so that a person filling it out and submitting it is likely to think that he is requesting that the law firm include him in the class action mentioned at the beginning of the form.

**[8]** Prospective clients' communications with a view to obtaining legal services are plainly covered by the attorney-client privilege under California law, regardless of whether they have retained the lawyer, and regardless of whether they ever retain the lawyer. Under *Beery*, "[t]he fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not

---

[18]Cal. Evid. Code § 952.

[19]*Id.* § 951.

result."[20] Applying that principle, the California Supreme Court held in *Beery* that a lawyer was subject to discipline when a person, not then a client, came in to ask the lawyer about writing a will for him (but did not hire him to do it), and the lawyer talked the person into an investment that his fiduciary duty would prohibit him from selling to a client.[21]

[9] There is nothing anomalous about applying the privilege to such preliminary consultations. Without it, people could not safely bring their problems to lawyers unless the lawyers had already been retained. "The rationale for this rule is compelling," because "no person could ever safely consult an attorney for the first time with a view to his employment if the privilege depended on the chance of whether the attorney after hearing his statement of the facts decided to accept the employment or decline it."[22] The privilege does not apply where the lawyer has specifically stated that he would not represent the individual and in no way wanted to be involved in the dispute,[23] but the law firm did not do that in this case — it just made it clear that it did not represent the submitter *yet*. Under *People v. SpeeDee Oil Change Systems, Inc.*,[24] when the communication between a lawyer and possible client proceeds "beyond initial or peripheral contacts" to acquisition by the lawyer of information that would be confidential were there to be representation, the privilege applies.[25]

In deciding that the district court plainly erred, and that a writ of mandamus must be granted, our judgment is not based on a mechanical application of verbal formulas. We are influenced by how fundamental the lawyer-client privilege is to

---

[20]*Beery*, 739 P.2d at 1293 (quotations and citation omitted).

[21]*Id.* at 1289.

[22]*People v. Gionis*, 892 P.2d 1199, 1205 (Cal. 1995) (quotations and citation omitted).

[23]*Id.* at 1206.

[24]*People v. SpeeDee Oil Change Sys., Inc.*, 980 P.2d 371 (Cal. 1999).

[25]*Id.* at 380.

the operation of an adversarial legal system. Potential clients must be able to tell their lawyers their private business without fear of disclosure, in order for their lawyers to obtain honest accounts on which they may base sound advice and skillful advocacy. There would be no room for confusion had the communication been in the traditional context of a potential client going into a lawyer's office and talking to the lawyer. The changes in law[26] and technology[27] that allow lawyers to solicit clients on the internet and receive communications from thousands of potential clients cheaply and quickly do not change the applicable principles.

GlaxoSmithKline cannot be permitted access to a communication that a plaintiff made confidentially to his lawyer in order to compare it to what the same individual said at a deposition. But that is exactly what GlaxoSmithKline seeks. It must be conceded that if a plaintiff says one thing to his lawyer, and says another at his deposition, keeping the first disclosure secret creates a risk to the honest and accurate resolution of the dispute. That risk is mitigated by the plaintiffs' lawyers ethical duties of candor toward the tribunal and fairness to the opposing party and counsel.[28] The privilege does not mean that the plaintiffs may lie about their symptoms, or that their lawyers may allow them to lie. A lawyer can be disbarred for offering evidence that the lawyer knows to be false, failing to disclose a material fact when disclosure is necessary to prevent a fraud by the client, or assisting a witness to testify falsely.[29] Most lawyers' sense of honor would prevent them from doing these things even if they were not at risk of losing their licenses if they did. These restraints of honor and ethics, rather than court-ordered disclosure of con-

---

[26]*See Bates v. State Bar of Ariz.*, 433 U.S. 350 (1977) (allowing attorney advertising).

[27]*See* Cal. Evid. Code § 952.

[28]*See* ABA Model Rules of Prof'l Conduct 3.3, 3.4; State Bar of California Rule of Prof'l Conduct 5-200.

[29]*See supra* note 28.

fidential communications, are the means that our system uses to deal with the risk of clients saying one thing to their lawyers and another to opposing counsel, the judge, or the jury.

## ORDER

**[10]** We grant a writ of mandamus, and vacate the district court's order compelling disclosure of the four plaintiffs' questionnaires posted by their law firm on the internet.