NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RASHID EL MALIK,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2011-7201

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 11-2110, Judge Lawrence B. Hagel.

---

Decided: February 13, 2012

---

RASHID EL MALIK, of Palos Verde's Estate, California, pro se.

STEVEN M. MAGER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and

FRANKLIN E. WHITE, JR., Assistant Director. Of counsel on the brief was DAVID J. BARRANS, Deputy Assistant General Counsel, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before PROST, MAYER, and REYNA, *Circuit Judges.*

PER CURIAM.

Rashid El Malik ("El Malik") appeals the decision of the United States Court of Appeals for Veterans Claims' ("Veterans Court") denying his petition for writ of mandamus, which sought to have the Veterans Court direct the Department of Veterans Affairs ("VA") to accept and grant his application for accreditation as an attorney authorized to represent claimants for VA benefits. Because we conclude that the Veterans Court correctly denied El Malik's petition as failing to present a claim to an indisputable right to such extraordinary relief, we affirm.

## I. BACKGROUND

The Secretary of Veterans Affairs "may recognize any individual as an agent or attorney for the preparation, presentation, and prosecution of claims under laws administered by the Secretary." 38 U.S.C. § 5904(a). The VA may require that such individuals establish good moral character and reputation, as well as demonstrate qualifications and competency to represent claimants, as prerequisites to accreditation. *Id.* The VA regulations further specify the standards for accreditation of attorneys. *See, e.g.*, 38 C.F.R. § 14.629(b). Among other things, the regulations require applicants for accreditation to disclose information regarding any criminal background. *Id.* § 14.629(b)(2)(iv).

After notice and the opportunity for a hearing, the VA may "suspend or exclude from further practice before the Department" any previously accredited attorney who has "violated or refused to comply with any of the laws administered by the Secretary, or with any of the regulations or instructions governing practice before the Department . . . ." 38 U.S.C. § 5904(b)(4). The regulations provide that accreditation may be cancelled if it is established by clear and convincing evidence that the attorney has violated any applicable VA law, including proof that the attorney has "[d]emand[ed] or accept[ed] unlawful compensation for preparing, presenting, prosecuting, or advising or consulting, concerning a claim . . . ." 38 C.F.R. § 14.633(c)(3).

El Malik's accreditation to represent claimants before the VA was cancelled on April 28, 2005 based on charges that he knowingly presented false information to the VA and accepted unlawful compensation in exchange for his representation. In particular, it was found that El Malik stated on his application for accreditation that he had never been a defendant in a criminal proceeding, when in fact he was a defendant in several criminal cases. El Malik was also found to have charged fees for his services prior to the Board of Veterans Appeals' ("BVA") final decision in certain matters he was handling, in violation of 38 U.S.C. § 5904(c)(1) (2005) which prohibited such a practice.[1]

---

[1]    38 U.S.C. § 5904(c)(1) was subsequently amended in 2006 to prohibit the charging of fees for services rendered "before the date on which a notice of disagreement is filed with respect to a case," replacing the existing language of "before the date on which the Board of Veterans' Appeals made a final decision in a case." Veterans Benefits, Health Care, and Information Technology Act of 2006, P.L. 109-461, 120 Stat. 3403, 3407 (December 22,

Both the BVA and the Veterans Court upheld the cancellation of El Malik's accreditation, rejecting El Malik's arguments on the merits of the charges against him, as well as his contention that the cancellation violated his constitutional right to due process. El Malik then appealed to this court. Pursuant to 38 U.S.C. § 7292(d)(2), we did not have jurisdiction to examine the merits of El Malik's termination, but we rejected his due process arguments. *El Malik v. Shinseki*, 374 Fed. Appx. 980 (Fed. Cir. 2010). Upon a careful review of the record, the alleged due process violations—that the VA postponed his hearing, failed to communicate with his counsel, and appointed a non-VA hearing officer—were found to be "unconvincing," and in any event El Malik failed to show any prejudice or harm as a result of the alleged violations. *Id.* at 981. El Malik's cancellation of his accreditation thus became final.

El Malik then filed a new application for accreditation on September 27, 2010. On April 8, 2011, the VA returned El Malik's application to him along with a letter explaining that the VA would not reinstate his accreditation. The letter noted that the VA has the authority to permit reinstatement of attorneys whose accreditations are cancelled for receipt of unlawful fees under 38 U.S.C. § 5904(c)(3)(C), which provides as follows:

> If the Secretary . . . suspends or excludes from further practice before the Department any agent or attorney who collects or receives a fee in excess of the amount authorized under this section, the suspension shall continue until the agent or attorney makes full restitution to each claimant from whom the agent or attorney collected or re-

---

2006). It is undisputed that the pre-2006 law governed when El Malik engaged in the conduct at issue.

ceived an excessive fee. If the agent or attorney makes such restitution, the Secretary may reinstate such agent or attorney under such rules as the Secretary may prescribe.

The letter further noted that the VA has discretion as to whether and under what circumstances such reinstatement should occur, even if the required restitution has been made. A11-12 (quoting 38 U.S.C. § 501(a) ("The Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department . . . .")). While the VA opted to permit reinstatement for suspended accreditations under 38 C.F.R. § 13.633(g), the VA "decided that an individual whose accreditation has been cancelled should no longer be permitted to represent claimants before the Department," and so there were no rules prescribed for reinstatement of such individuals. *Id.*

El Malik filed a petition for a writ of mandamus with the Veterans Court, alleging that he was improperly denied reinstatement of his accreditation based on his new application. El Malik's petition relied on § 5904(c)(3)(C), which he contended required his application to be considered. He also pointed to regulations existing in 2005 providing that the records of cases where accreditations are terminated will be maintained in the General Counsel's office for three years from the date of the final termination decision. 53 Fed. Reg. 52416 (Dec. 28, 1988) (revising 38 C.F.R. § 14.633(g)); 76 Fed. Reg. 58009, 58012-13 (October 12, 2007) (again revising § 14.633 to remove the three-year maintenance of termination records provision). El Malik took the regulations to mean that after three years he would be entitled to reinstatement. He further contended that the VA findings relied upon to disaccredit him in 2005 could not be used to reject his new application for accreditation, under

principles of *res judicata* and collateral estoppel.   Finally, El Malik alleged that the VA's failure to reinstate him violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The Veterans Court found that El Malik failed to meet the requirements for issuance of a writ of mandamus: (1) that the party seeking issuance of the writ has no other adequate means to attain the desired relief, which ensures that the writ is not utilized to circumvent the normal appeals process; (2) that the right to issuance of the writ is "clear and indisputable;" and (3) that the court is satisfied in its discretion that granting the writ is appropriate under the circumstances.  A1-2 (citing *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004)).   The Veterans Court viewed El Malik's petition as relitigating the same issues raised in his earlier appeal, and cautioned him not to raise issues before this court that have already been decided.  Because El Malik's claims were believed to have already been adjudicated and rejected, El Malik's petition was dismissed as unable to satisfy the stringent criteria for a writ or mandamus.  This appeal followed.

## II.  DISCUSSION

We have jurisdiction over the issue of whether the Veterans Court properly denies a petition for writ of mandamus.  28 U.S.C. § 1651(a); *Cox v. West*, 149 F.3d 1360, 1363-64 (Fed. Cir. 1998); *see also Lamb v. Principi*, 284 F.3d 1378, 1382 (Fed. Cir. 2002).   "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 402 (1976).  Accordingly, because "[i]ssuance of the writ is in large part a matter of discretion with the court to which the petition is addressed," *id.* at 403, we review the

Veterans Court's denial of a petition for a writ of mandamus for abuse of discretion. *See Lamb,* 284 F.3d at 1384.

As a threshold matter, the Veterans Court mischaracterized the arguments made in El Malik's petition for a writ of mandamus. The petition does not seek to relitigate the 2005 cancellation of El Malik's accreditation. Rather, it seeks to compel the VA to reinstate his accreditation based on his new application filed in 2010. A4 (seeking, as specified under "RELIEF SOUGHT" heading, "[r]einstatement of accreditation pursuant to 38 U.S.C. § 5904(c)(3)(C)"). The issues and arguments made by El Malik are plainly distinct from those previously raised, as he is now relying primarily on the text of § 5904(c)(3)(C) and the three-year record maintenance regulations in effect in 2005 to assert that his new application must be considered by the VA even though his accreditation was previously cancelled.

Nonetheless, the Veterans Court's mischaracterization of El Malik's argument was harmless because he is not entitled to mandamus relief under his theory. El Malik's theory on appeal may be essentially expressed as follows:

> (1)    The VA has no rules or procedures in place for accreditation of attorneys whose prior accreditations were cancelled—rules and procedures exist only to reinstate "suspended" attorneys;

> (2)    The regulations in effect in 2005 provided that the record of El Malik's 2005 accreditation cancellation would be maintained for only three years, making El Malik's cancellation in fact only a three year suspension;

> (3)    El Malik's new application for accreditation was filed in 2010, more than three years after the

2005 decision to "cancel" his accreditation, but due to the absence of rules and procedures no formal examination or appealable denial of his application was made—it was simply returned to him; and

(4)    Section 5904(c)(3)(C) imposes an obligation on the VA to consider an application for accreditation by formerly suspended practitioners;

(5)    Therefore, El Malik's new application for accreditation should be granted, but he has no avenue for relief before the VA, and so a writ of mandamus is necessary to direct the VA to process his application.

We find El Malik's argument to be unpersuasive for two reasons.

First, the regulations in effect in 2005 provided only that the records of El Malik's cancellation proceedings "will be maintained in the General Counsel's office for 3 years." 53 Fed. Reg. 52416 (Dec. 28, 1988) (revising 38 C.F.R. § 14.633(g)). This regulation does not deem all cancellations mere three-year suspensions, but simply prescribes rules for recordkeeping. The VA regulations carefully differentiate between provisions that apply to suspension and those that apply to cancellation. *Compare* 38 U.S.C. §§ 14.633(b),(c),(d) (2012) (providing for various instances when accreditation "shall be canceled") *with id.* § 14.633(g) ("The General Counsel may suspend the accreditation of a [practitioner] under paragraphs (b), (c), or (d) of this section, for a definite period or until the conditions for reinstatement  . . . are satisfied."). We would be remiss to muddle such distinctions by reading a recordkeeping provision that is silent as to the effect of the expiration of the three-year period, as one that some-

how converts a cancelled accreditation into a mere suspension.

Second, § 5904(c)(3)(C) does not require the VA to re-accredit any suspended practitioners, but only permits such action at the VA's discretion, providing that "the Secretary *may* reinstate such agent or attorney under such rules as the Secretary may prescribe." Even if the VA elects to permit such re-accreditation, § 5904(c)(3)(C) expressly applies only to suspensions due to unlawful fee collection, and requires that the suspension "*shall* continue until the agent or attorney makes full restitution to each claimant from whom the agent or attorney collected or received an excessive fee." We see no evidence that El Malik has undertaken the prerequisite restitution.

Because the above discussion dispels the possibility of any "clear and indisputable" right to the relief requested by the petition, *Cheney*, 542 U.S. at 380-81, we agree with the Veterans Court—albeit on different grounds—that a writ of mandamus is inappropriate in these circumstances.

### III. CONCLUSION

For the foregoing reasons, the judgment of the Veterans Court is

**AFFIRMED**

#### COSTS

No costs.